**People of the State of Illinois, Plaintiff-Appellee, v. Levi Wright and Woodrow Ward, Defendants-Appellants.**

Gen. Nos. 52,019, 52,020.

First District, First Division.

May 11, 1970.

 

Gerald W. Getty, Public Defender of Cook County, of Chicago (Paul Bradley, Theodore A. Gottfried, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial defendants, Levi Wright and Woodrow Ward, were each convicted of the offenses of rape and armed robbery. They were sentenced to the penitentiary for concurrent terms of seven to fifteen years on each offense. On appeal the issues presented for review are: (1) were the identifications of the two defendants constitutionally proper; and (2) were the defendants denied their right to a fair trial by improper rulings and instructions of the trial court.

On April 2, 1966, at about 8:30 p. m., the prosecutrix left a beauty shop and proceeded home. As she turned into her apartment doorway, someone grabbed her arm from behind and said, "Keep walking, there is two other mens behind you." The three men (later identified as defendant Levi Wright, defendant Woodrow Ward, and

one Lonnie Lowe) took her to the rear of an adjoining apartment building and forced her down to an entrance-way below street level. There was a light on over the stairway about six or seven feet from the prosecutrix, and she could see the faces of the men in the areaway. At the bottom of the stairway defendant Levi Wright was one to two feet away from her and defendant Ward was directly in front of her. Lonnie Lowe was standing on the stairs as a lookout.

The prosecutrix testified that defendant Wright then asked her for some money, and she gave him the change that was in her pocket. When she gave Wright the money, Ward was standing in front of her, and Lowe began pulling up her skirt. After she gave the change to Wright he grabbed her purse and saw that she had more money. He took approximately $17 from her and placed a knife against her throat and stated, "You lie, I should kill you." All three men then had intercourse with her. She stated that she had been in the gangway for approximately one-half hour.

The prosecutrix then went to the apartment of her cousin and told her that she had been raped. This was approximately 10:00 p. m. Two police officers came to the apartment. She was crying and gave them a description of her assailants. She was then taken to Cook County Hospital and examined. After the examination she was accompanied to the Fillmore police station by Police Officer Severin. At that time she viewed a lineup of six Negro men, who were asked to speak certain words, and she identified defendant Wright and Lowe. As to defendant Ward, she testified that after she viewed the lineup she was waiting in the waiting room for her cousin, when Woodrow Ward entered the station, and she immediately identified him as the third person. She said, "He wasn't in the lineup. . . . Even though he was all by himself, I pointed him out right away. That was the same man that

I had previously told the officer that all I remembered about him was that he was 23 and dark complected and had processed hair; and his height." She further said, "I don't recall Detective Severin being there at the time I first saw Woodrow Ward. There wasn't any police officer with me at the time I first saw Woodrow Ward in the station." She identified People's Exhibit No. 1 as the knife which Wright placed at her neck and People's Exhibit No. 3 as the pants she was wearing the night of the occurrence.

On cross-examination the prosecutrix testified she had described defendant Wright to the police as having large eyes and processed hair with large curls. Wright was wearing a beige colored trench coat and had a medium complexion. Defendant Ward was approximately 5', 8", 130 to 140 pounds, and also had processed hair with curls. He was also dark skinned. Lowe was 6', 3", wore a black trench coat and hat and had dark colored pants on. She further testified that when she was attending the lineup, Officer Severin never informed her that they had the men in custody or that they wanted her to identify them. At the lineup, Lowe and Wright were wearing the same clothes they were wearing when they attacked her.

Officer Clay Sostand testified that he was a Chicago police officer assigned to the Fillmore District. On April 2, 1966, at about 9:30 p. m., he interviewed the prosecutrix. He received a description from her as to her three assailants. He then went directly to the district station and as he passed through an interrogation room, there were two men and two police officers present. He recognized the two men from the description that had been given to him by the prosecutrix. He said, "I see those two men in the courtroom," and indicated Wright and Lowe. A short time later the prosecutrix arrived at the police station and identified Wright and Lowe from a lineup of six men. After the lineup, he and Officer Martin arrested Ward after Lowe pointed out Ward as being

the third man involved. He identified various People's exhibits as clothing worn by and taken from the defendants. Officer Sostand further testified that after talking to the prosecutrix, they surveyed the area in which she said she had been raped, and they found various cards and papers belonging to the prosecutrix.

Officers William Johnson, James Butler, Charles Martin and James Severin also testified for the State. Johnson testified that he was present at the lineup where the prosecutrix identified Lowe and Wright. Also, when he arrested Lowe, he found a butcher knife on his person. Butler testified that he obtained various items of clothing from Lowe and Wright after the showup. Martin testified that the six Negroes in the lineup were dressed in all sorts of different street attire. He was with Lowe when Lowe pointed out Ward as the third man involved. Officer Severin testified that the prosecutrix was seated in the waiting room when Ward first entered the station.

Joseph Price testified that he was a microanalyst assigned to the Chicago Police Department. He found discharges on the panties of the prosecutrix; on Lowe's pants he found white mucus stains at the fly area; also, some spermatozoa; on the pants of Wright he found spermatozoa; on Ward's clothing the results were negative.

Dr. Matsuda testified that he had occasion to examine the prosecutrix at the hospital. He found that there was no trauma and did not find any sperm under the miscroscopic examination.

Defendant Ward testified that on the night in question he was with Lonnie Lowe and a man by the name of Phillips. They all had a drink together and then he and Phillips went to Ida Cole's house. They left her house at approximately 10:00 p. m. and went back to the Bee Hive Restaurant. At that time the police came into the tavern and took him out to a police car, where Lonnie Lowe was seated. Lonnie Lowe pointed him out and called him

227

"Lefty." He was then taken to the police station but was not placed in a lineup at any time. He saw the prosecutrix in the police station, but had never seen her before. He was then taken in front of her and she was asked if he was the man, and she replied, "No." After he took his hat off she still said he was not the man. On cross-examination he testified that he did not know Phillips' last name. Also, Officer Severin was not present in the station when the prosecutrix refused to identify him.

Lonnie Lowe testified that he was with Woodrow Ward at 6:30 p. m. on April 2, 1966. He then left Ward and when he got off of the "El" he happened to meet Levi Wright. He had not known Wright before that. He asked Wright if he could walk with him because he had been attacked recently in that neighborhood. The police then arrested him and confiscated a knife from him. He carried the knife because he had been previously robbed. He was then placed in a lineup at which time he was not wearing a hat, and the prosecutrix identified him. The police started to beat him up and kept screaming about a third man, but all he told them was that he knew a man by the name of Ward and that Ward was with him that evening. He then identified Ward outside of a tavern.

Ida Cole testified that she was with Ward at her home on the date in question between 9:00 and 9:30 p. m. A man by the name of Phillips was with him.

Shirley Wright, defendant Wright's sister, testified that she saw her brother at a party at 8:30 p. m. on the night in question. He was leaving at that time.

Defendant Wright testified that on the night in question he was at a party and left the party at 8:30 p. m. to go to a friend's home. He stayed there for approximately an hour and one-half. At approximately 9:30 p. m. he met Lonnie Lowe, but did not know Lowe. Lowe asked him if he would walk up the street with him. He was arrested with Lowe and placed in a lineup. At one time dur-

ing the lineup he saw the prosecutrix shake her head and then someone touched him on the shoulder.

Defendant Ward initially contends that the admission into evidence of testimony that the prosecutrix had identified him at the police station after his arrest violated his Fourteenth Amendment right to procedural due process of law, since he was identified singly without a lineup, and due process requires a lineup whenever the police can reasonably provide one, as in the instant case. Defendant Ward maintains that his guilt was not proved beyond a reasonable doubt. He had an alibi, and the lighting at the scene of the offense was uncertain. He further contends that his identification by the prosecutrix at the police station was both suggestive and unreliable, and that juries tend to give great weight to eyewitness identification, regardless of its lack of persuasiveness.

The numerous authorities cited by defendant include Wall, Eyewitness Identification in Criminal Cases; Stovall v. Denno, 388 US 293 (1967); and People v. Botulinski, 383 Ill 608, 50 NE2d 716 (1943).

In Wall, Eyewitness Identification in Criminal Cases, it is stated (p 28):

> "The emotions of the victim's injury, fraud, or deception create a predisposition to believe the worst of a person brought before him as the probable offender, especially where there is no alternative suspect."

In Stovall v. Denno, the defendant was brought to the hospital room of the victim of a burglar's attack, and she identified him as her assailant. At trial she again identified the defendant and testified to the prior hospital identification. The court held that the defendant was not deprived of due process of law by such an identification procedure because (1) there was no other way to bring defendant before the victim because she might die, and

(2) the victim was the only person in the world who could exonerate the accused and so effect his release, particularly since the evidence against him was overwhelming. The court stated (p 302) :

> "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative."

In People v. Botulinski, the defendant was convicted by a jury of the armed robbery of a gas station. The only direct evidence of guilt was the testimony of a single victim. The accused had an alibi, and the lighting near the scene of the crime was "uncertain." The Illinois Supreme Court reversed the conviction and stated that a single-suspect identification should be given less weight than a lineup.

We agree with the State that the identification of the defendants was "clear, convincing and untainted" and had an independent origin. (People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152 (1969) ; People v. Cook, 113 Ill App2d 231, 252 NE2d 29 (1969).) The prosecutrix had an ample opportunity to view her assailants. They were in a lighted area for approximately one-half hour, and defendant Ward was immediately in front of her at all times, and she was able to identify two of her assailants in the lineup.

We conclude that the record does not sustain defendant Ward's contention that the manner of his identification at the police station deprived him of due process of law. The record indicates that the identification of Ward by the prosecutrix in the waiting room of the police

230

■■■■■■

station was a coincidence and no different than if she had seen him walking down the street and called the police. The "totality of the circumstances" here does not indicate that a lineup was necessary. (Stovall v. Denno.) We find that the "police station" and "in-court" identifications of defendant Ward by the prosecutrix were properly admitted into evidence.

Defendants next contend that "the court allowed police officers to testify that complaining witness identified Wright from a lineup, and allowed officers to testify that Lowe, a codefendant, identified Ward, thereby committing prejudicial error against defendants." Defendants assert that this testimony was inadmissible hearsay and its effect was to give the impression to the jury that the evidence against the defendants was corroborated. Authorities cited on this point include People v. Braverman, 340 Ill 525, 173 NE 55 (1930) ; People v. Lukoszus, 242 Ill 101, 89 NE 749 (1909) ; and People v. Wright, 65 Ill App2d 23, 212 NE2d 126 (1965).

In People v. Wright, police officers were permitted to testify concerning statements made in defendant's presence concerning defendant's identity, and they were allowed to testify as to the identification. On closing argument the prosecutor made reference to their testimony. In reversing the conviction the court stated (p 28) :

> "The sole evidence involving defendant in the crime was the testimony of the complaining witness. The effect of such additional statements was to give the impression to the jury that the evidence against defendant was corroborated."

■■ In the instant case the State argues that no objection was raised to the testimony complained of, and the introduction of such testimony at most was harmless error because the circumstances of each identification were reiterated by the complaining witness and the defendants.

On this point it has been said repeatedly that it is error to permit a police officer to testify to the statements made and the things done by a victim by way of identification of the defendant. (People v. Reeves, 360 Ill 55, 64, 195 NE 443 (1935).) We note, also, that although courts of review have repeatedly condemned such evidence, the courts have labeled the testimony "harmless error" and "merely cumulative" if no prejudice to the defendant is shown. This is especially so where the defendant makes no objection to the officer's testimony, as here. (People v. Campbell, 113 Ill App2d 242, 248, 252 NE2d 26 (1969).) We have examined the testimony in question and some of it is hearsay and improper. Although plain errors or defects affecting substantial rights may be noticed, notwithstanding they were not brought to the attention of the trial court, we find no substantial prejudice here. See People v. Dial, 95 Ill App 2d 345, 362, 238 NE2d 122 (1968).

◼ Defendants further contend that "the defendants were denied their right to a fair trial by the improper rulings and instructions of the trial court." We have examined the introductory instructions and remarks by the trial court and also the instructions given to the jury for its deliberations, including State's instruction No. 9, which defendant asserts incorrectly stated the law of alibi defense. We find the jury was adequately instructed on the issues, and no prejudicial error is demonstrated.

◼ Defendants contend that the trial court erred at the end of the State's case by allowing counsel for the defendants to waive the presence of the defendants during the offering of exhibits into evidence which had been previously identified in the presence of the defendants. At the offering into evidence of the exhibits, defendants' counsel, in response to a question by the trial court, "Do you want the defendants out here?", replied, "No, Judge, I waive the presence of the defendants, sure." Defend-

ants cite People v. Mallett, 30 Ill2d 136, 195 NE2d 687 (1964), where it is said (p 141):

> "A defendant in a criminal case has an absolute right to be personally present at all stages of his trial. . . . This right may be waived by the defendant but the attorney for the defendant has no power to waive this right on behalf of the defendant."

We think the pronouncements set forth in People v. Woods, 27 Ill2d 393, 189 NE2d 293 (1963), apply here. There it is said (p 395):

> "We have repeatedly held that the constitutional guaranty is not infringed upon by holding hearings outside defendant's presence which do not involve substantial rights of the accused, . . . and defendant's right to be present at the trial itself, or any portion thereof, may be voluntarily waived even in felony cases."

And at page 396:

> "[T]he right to be present at a hearing upon a motion for continuance, or advancement and continuance, may be waived by defendant, or by his counsel on his behalf."

We find no prejudicial error was committed here.

■ A review of the totality of the evidence shows there was substantial positive evidence to support defendants' convictions beyond a reasonable doubt. Defendants were permitted liberal direct examination and cross-examination in all vital areas. We find the trial errors heretofore discussed could not have affected the verdicts.

For the reasons given, the judgments of the trial court are affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.