THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME TAYLOR, Defendant-Appellant.

(No. 59100; )

First District (4th Division)—March 13, 1974.

Paul Bradley, Deputy Defender, of Chicago (Steven Clark, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Scott W. Petersen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Following a jury trial, the defendant, Jerome Taylor, was found guilty of armed robbery and sentenced to a term of 4 to 8 years in the penitentiary. On appeal, the appellant presents the following issues for review:

> 1. Whether the identification of the defendant by the occurrence witnesses established his guilt beyond a reasonable doubt;
>
> 2. Whether testimony concerning the defendant's silence when arrested was erroneously admitted into evidence on cross-examination;
>
> 3. Whether the prosecutor's closing argument was improper, inflammatory and prejudicial, thereby denying defendant a fair trial.

The complaining witness, Mrs. Carol Kapior, testified that at 12:30 P.M. on June 24, 1972, she was robbed by a lone gunman in the parking lot of Zayre Deparement Store, Ashland and 42nd Street in Chicago. According to the witness, a man came up behind her and "mumbled something" while she was unloading her car. She turned and observed a silver-colored gun in his hand. The gunman ordered Mrs. Kapior into her car, and she got into the front seat while the man slid into the back seat. He then demanded her wallet, and she turned around and observed his face for 4 or 5 seconds while surrendering it. The gunman then directed Mrs. Kapior to lie down on the front seat. She complied and, after waiting for a couple of minutes, lifted her head and saw the man running away from the scene. He was wearing striped pants, a short denim jacket and a knit hat with a plume or pom-pom in top.

When Mrs. Kapior got out of her car, she saw a man standing in a bread truck in the next parking space. The truck driver, Mr. Conrad Bradich, testified that he observed a man, whom he later identified as the defendant, approach the parking lot and confront Mrs. Kapior. Bradich heard no conversation but knew something was wrong by the look on her face and the tears in her eyes. When she emerged from the car, Bradich asked if she had been robbed; Mrs. Kapior replied that she had. Bradich immediately began chasing the robber in his truck while, simultaneously, Mrs. Kapior ran into the Zayre store and reported the robbery to two off-duty Chicago police officers who were employed by Zayre's as part-time security guards. When the two guards came outside, the breadman had returned; Bradich said he lost sight of the robber when the latter vaulted a fence but that he knew where the man would emerge. Mr. Bradich and the two guards drove off in the bread

truck to a semi-trailer truck and found the defendant there. As the officers jumped from the bread truck, the defendant ran from them but was apprehended in front of the store. He was wearing blue striped pants.

A short denim jacket, a knit hat with a pom-pom on top, a silver-colored gun and Mrs. Kapior's wallet were recovered from beneath the same trailer truck where the defendant was seen emerging. In a lineup, Mrs. Carol Kapior and Mr. Conrad Bradich positively identified the defendant as the man who committed the robbery.

The final witness for the State was Daniel Atherton, a Chicago police officer employed as a security guard at Zayre's, who arrested the defendant. Officer Atherton testified that, subsequent to being alerted to the robbery by Mrs. Kapior, he and his partner got into Conrad Bradich's bread truck and drove toward the semi-trailer truck. After travelling about 75 feet in the truck, Officer Atherton observed the defendant and it looked to him as if the defendant was "hiding" behind the semi-trailer truck. Upon seeing the bread truck, the defendant began running but was pursued, overtaken and apprehended. Officer Atherton testified that the blue denim jacket recovered from beneath the semi-trailer truck fit the defendant.

Mr. Arthur Cotton and the defendant testified for the defense. Both claimed that they had gone to the Zayre Department Store to look for auto parts to work on Mr. Cotton's auto. As they drove into the parking lot at Zayre's, the defendant testified that he noticed a man disappear behind a trailer truck. When the man did not reappear, Taylor went to investigate and satisfy his curiosity while Arthur Cotton went on to park the car. Upon rounding the trailer, the defendant stated that he saw the police and ran because of his fear of white policemen. Jerome Taylor claimed that he had never before seen the gun, blue denim jacket, knit hat with the pom-pom on top or the wallet which were found under the trailer truck. Mr. Cotton testified that, after waiting 2 or 3 minutes inside the car, he got out to look for Taylor. However, Mr. Cotton testified that he left and said nothing when he saw the policemen jump from the bread truck, chase and grab the defendant.

The first issue raised by the defendant in this appeal is that he was not proved guilty beyond a reasonable doubt. He contends that his identification by the two occurrence witnesses was uncertain and their ability to identify him at the lineup did not prove that he was the same man who had robbed Mrs. Kapior.

Defendant argues that the conditions under which the witnesses observed the incident did not afford them an opportunity to make a positive identification, that their initial descriptions of the robber to the security

guards were vague, that the clothes allegedly worn by the robber were not in any way unusual, and that the jacket and hat found near the semi-trailer truck where he was observed could easily have fit anyone of medium build.

■■ After carefully considering these objections, we find them insufficient to require a reversal of defendant's conviction. It is well settled in Illinois that the testimony of one witness, if it is positive and the witness is credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People v. Stringer* (1972), 52 Ill.2d 564, 569, 289 N.E.2d 631, 634; *People v. Robinson* (1972), 3 Ill.App.3d 858, 862, 279 N.E.2d 515, 518; *People v. Marshall* (1966), 74 Ill.App.2d 472, 476, 221 N.E.2d 128, 130; *People v. Washington* (1962), 26 Ill.2d 207, 210, 186 N.E.2d 259, 261; *People v. Lamphear* (1955), 6 Ill.2d 346, 128 N.E.2d 892.) A positive identification by two witnesses, as here, lends further credence to the identification. Mrs. Kapior had three separate and unobstructed views of the defendant, and Mr. Bradich observed the entire incident from a distance of one parking space away from the Kapior car. Both eyewitnesses positively identified the defendant.

■■ After hearing all the evidence, the jury chose to believe the identification testimony of the two occurrence witnesses rather than the account given by the defendant and his friend. It is the province of the jury to weigh the evidence and determine the credibility of the witnesses, and a reviewing court will not overturn its verdict unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Sumner* (1969), 43 Ill.2d 228, 232, 252 N.E.2d 534, 536; *People v. Kelley* (1963), 29 Ill.2d 53, 59, 193 N.E.2d 21, 24.) After an examination of the record, we cannot say that the jury's determination was erroneous.

Defendant argues, further, that the witnesses' ability to identify him at a lineup was not convincing. Since both Mrs. Kapior and Mr. Bradich observed the defendant's arrest, he contends that their lineup identifications only demonstrated that they could identify the person arrested and not that the man arrested was the same person who robbed Mrs. Kapior.

This argument is not supported by the record of the proceedings at trial. Referring to the lineup, Mrs. Kapior testified as follows:

"Q. And did you—did you observe a lineup at that time?

A. Yes, sir.

Q. And whom did you see in that lineup, if at all, that you recognized?

A. Mr. Taylor.

Q. And how did you recognize him?

A. I recognized him by his face and everything.

Q. And are you positive that's—that's the same man who robbed you earlier that day?

A. Yes, sir."

Bradich's testimony regarding the lineup was as follows:

"Q. Mr. Bradich, the person whom you saw arrested, was that the same person that you had seen with Mrs. Kapior?

A. Yes, it is.

Q. And the person that you identified in the lineup, is that the same person that was arrested, when you saw Mrs. Kapior?

A. Yes.

Q. And you have identified him as the defendant, Jerome Taylor, is that correct?

A. Yes, I have."

In view of the above, we find adequate support in the record to show that both occurrence witnesses positively identified the defendant as the man who robbed Mrs. Kapior in the Zayre parking lot on June 24, 1972.

Secondly, defendant contends that it was error for the prosecutor to elicit testimony concerning his silence when arrested. He objects to the following colloquy that occurred, without objection, during cross-examination:

"Q. Did you say anything to the officer when he said, 'There, that's the man'?

A. Did I say anything to him—this is back at Zayre's? At that moment?

Q. Yes.

A. No, I didn't—

Q. Did you say anything to the policemen at that time?

A. No. I didn't [but] after they had me in the lockup, I did. I said, 'I am not alone.' I said I had a friend outside."

The prosecutor did not refer again to the defendant's silence but, during rebuttal, the arresting officer testified that the defendant did not ask him to look for the defendant's friend.

Defendant argues that cross-examination regarding his silence upon arrest was improper since the exercise by an accused of his constitutional right against self-incrimination shall not be subject to comment at trial. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 684, 86 S.Ct. 1602.) He further argues that we should consider this contention on the merits notwithstanding the failure of defense counsel to object inasmuch as Supreme Court Rule 615(a) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. Rev. Stat. 1971, ch. 110A, par. 615(a).

In deciding whether the violation of a Federal constitutional right amounts to reversible error, we apply the standard established in *Chapman v. California* (1967), 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824. The Supreme Court there held that in order for an error involving a Federal constitutional right to be held harmless in a state criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. After reviewing the record before us, we have no doubt that the error complained of was harmless.

In *People v. Johnson* (1971), 2 Ill.App.3d 965, 275 N.E.2d 649, the defendant was apprehended at the scene of a burglary and was seen carrying goods from the premises. He invoked his constitutional right to remain silent, and an officer gave testimony to this effect at trial. The court held that the error committed thereby was harmless since the evidence of defendant's guilt was overwhelming. Here, as in *Johnson*, the evidence was overwhelming.

To support his contention, the defendant relies heavily upon *People v. Gates* (1973), 14 Ill.App.3d 367, 302 N.E.2d 470, where the court reversed and remanded a conviction for aggravated battery. The defendant in *Gates*, arrested for an alleged attack on a fellow employee, did not tell the police upon arrest that he acted in self-defense but did so testify at trial. Over objections the prosecution cross-examined the defendant about his failure to tell the police that he had acted in self-defense. Moreover, the prosecutor elicited testimony that defendant was silent when arrested from several witnesses and repeatedly stressed in closing argument that defendant had not raised his claim of self-defense until after his arrest. The error alleged here is not analogous to that in *Gates*, where the prosecutor attempted to discredit the defense by vigorously and repeatedly referring to defendant's silence following arrest. Here, the prosecutor made only a passing reference, without objection, to defendant's silence during cross-examination and did not repeat or comment on his silence at any other point.

■■ In view of the above, we are satisfied beyond a reasonable doubt that the error complained of was harmless. The evidence in the present case is overwhelming and the admission of the testimony in question was not sufficient to require reversal.

Finally, defendant contends that the prosecutor's closing argument was improper, inflammatory and prejudicial. He argues that the prosecutor alleged several matters to be fact which had not been presented in evidence, namely: that the defendant and Mr. Cotton passed several other auto parts stores but went "half way across the city to save a few cents

on spark plugs," and that the defendant had a gun in his pocket even though no weapon was found on his person when he was searched.

It is well settled that arguments based on facts in evidence or on legitimate inferences deductible from the evidence may be the subject of fair comment. (*People v. Weaver* (1972), 8 Ill.App.3d 299, 307, 290 N.E.2d 691, 696; *People v. Adams* (1972), 8 Ill.App.3d 8, 13, 288 N.E.2d 724, 728; *People v. Brown* (1971), 132 Ill.App.2d 302, 306, 270 N.E.2d 501, 504.) Here the record shows that the defendant and his friend, Arthur Cotton, had gone some distance to purchase spark plugs. Further, the comment that defendant had a gun in his pocket was an inference logically drawn from the fact that the defendant was positively identified as the man who committed the robbery at gunpoint. Moreover, the record shows that the trial judge instructed the jury to consider only the testimony in reaching their verdict. Thus, we find that the prosecutor's statements during closing argument were fair comments.

Defendant contends further that the prosecutor's warning to the jury in closing argument that they should not release the defendant unless they wanted an unsafe community was inflammatory and prejudicial. In *People v. Anderson* (1971), 48 Ill.2d 488, 272 N.E.2d 18, the defendant was referred to as a murderer and the jury was told that it had to decide whether he was to be punished for the murder he committed or whether he was to be turned loose on the streets of Peoria. In affirming the conviction, the court said at page 498:

> "We find nothing in the prosecutor's argument that expresses his personal opinion as to the guilt of the defendant. The statement clearly contains a reference to the evidence and his opinion as to what the evidence proves and thus is not improper. *People v. Hoffman*, 399 Ill. 57, 65."

■■ A prosecutor may, in closing argument, reflect unfavorably on the accused, apprise the jury of the evil results of crime and urge the fearless administration of the law if such comments are based on facts in the record or may be fairly inferred therefrom. (*People v. Durso* (1968), 40 Ill.2d 242, 253, 239 N.E.2d 842, 848; *People v. Hampton* (1962), 24 Ill.2d 558, 182 N.E.2d 698; *People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403.) Here, the jury was requested to consider the possibility that evil results might arise if the defendant was released. Since these remarks referred to the evidence and inferences that could be made therefrom, we find that the prosecutor's closing argument was not improper.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DIERINGER and BURMAN, JJ., concur.