THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE L. DECKER, Defendant-Appellant.

(No. 56613;

First District (3rd Division)—April 4, 1974.

*Rehearing denied May 2, 1974.*

James Edwyn Daniels and Jerome Rotenberg, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Elmer C. Kissane, Robin Auld, and Thomas McDonough, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant was indicted for three counts of theft, and a trial was had before a jury. His motion for a directed verdict of not guilty as to Counts I and II was granted at the close of the State's case. The jury returned a verdict of guilty on Count III, in which defendant was charged with theft by deception of more than $150 (Ill. Rev. Stat. 1967, ch. 38, par. 16—1(b)(1)). He was sentenced to a term of 2 to 5 years in the penitentiary. Defendant appeals.

Defendant contends that the trial court erred in denying in part his

motion for a bill of particulars; that the trial court erred in refusing to strike the testimony of a witness who allegedly testified in indirect violation of an order excluding witnesses; and that the evidence was insufficient to sustain his conviction. Defendant further contends that the closing argument of the prosecutor was prejudicial and that the trial court erred in refusing two of defendant's tendered instructions. The pertinent facts are hereinafter set forth.

The third count of the indictment, upon which defendant was convicted, charged that from July 18, 1967, until September 21, 1967, he committed the offense of theft in that he knowingly obtained by deception control over three checks of the total value of more than $150, the property of Michael Michalek and Loretta Hedrick, doing business under the name and style of Valiant Insurance Agency, a partnership, intending to deprive them permanently of the use and benefit of the property.

During trial Michael Michalek testified that he had been an insurance broker for 14 years and that Valiant Insurance Agency was a partnership consisting of himself and his wife, Loretta Hedrick. In 1966 he placed insurance policies through the defendant who was then an agent for Public Mutual Fire Insurance Company, and made premium payments for these policies to defendant's agency, Automobile Insurance Markets, 64 Old Orchard Road, Skokie, Illinois. He further testified that from April 1967 until October 1967 he ordered policies by telephone from Automobile Insurance Markets and that 99 percent of the policies he received in the mail were of the United Firemen's Insurance Company, a Delaware corporation. After receiving the policies the witness sent checks covering the premium payments to the defendant's agency. He identified three checks in the amounts of $2,010.40, $473.20 and $555.20, made payable to the order of Automobile Insurance Markets and drawn on the Valiant Insurance Agency, premium fund trust account, in payment for the United Firemen's policies issued to nine insureds, including one Evelyn Buchner and one Jose Campos. The premium fund trust account consisted of the premium payments received from customers and other brokers after deducting the commissions of the Valiant Insurance Agency. On cross-examination Michalek stated that the monies contained in the premium fund trust account did not in any way belong to him personally.

Jack Clark Fisher, assistant supervisor of the License Division of the Illinois State Department of Insurance, testified that the license records indicated that defendant was a general insurance broker in Illinois during the years 1965, 1966 and 1967; that he resided at 10034 LaCrosse, Skokie, Illinois, and that he maintained a business address at 64 Old Orchard Road, Skokie.

Robert C. Chapman, an investigator for the Illinois State Department of Insurance, testified that he met with the defendant on August 24, 1967 at the latter's office in Skokie. At the time, Chapman was investigating complaints that had been filed with his department against the defendant. The defendant informed him that he was the agent for and owner of Automobile Insurance Markets and that he represented the United Firemen's Insurance Company whose home office was in New York City. The defendant further told him that the United Firemen's policies were printed in New York City by a Mr. Cameron or a Mr. Murphy of United Firemen's, but that the United Firemen's policies in his possession came from a local broker named Bernard Becker.

Marie Shultie testified that she was employed by the Corporate Division of the State of Delaware, and that after a search of the division's files she could find no record of a United Firemen's Insurance Company ever having been chartered by the State of Delaware.

Margaret Dillon, chief of the Corporate Affairs Bureau of the New York State Insurance Department, testified that at no time was a United Firemen's Insurance Company of Delaware ever licensed in the State of New York.

Donald Eugene Weber, assistant supervisor of the Corporate Property and Liability Division of the Illinois State Department of Insurance, testified that there was no company named United Firemen's Insurance Company, a Delaware corporation, now or ever in the past, licensed in the State of Illinois. On cross-examination, the witness stated that prior to 1953 there were two United Firemen's Insurance Companies, one a Pennsylvania corporation and one a New York corporation, licensed in Illinois. The Pennsylvania corporation then merged into the New York corporation which was licensed in Illinois until 1957.

Kenneth Wayne Smith, rate examiner for the Illinois State Department of Insurance, testified that a search he conducted revealed that there were no policies of a United Firemen's Insurance Company, a Delaware corporation, in his department files, nor was there any authorization card for that company.

Bernard Becker testified that he was a general insurance broker and that in 1967 he placed insurance through the defendant with the United Firemen's Insurance Company. He also testified that he never had any United Firemen's policies printed and had never given the defendant any United Firemen's policies.

David Silk testified that during 1967 he was a general insurance broker doing business as the Friendly Insurance Agency, and that he placed insurance for a company owned by Evelyn Buchner through the Valiant Insurance Agency. Evelyn Buchner testified that she owned a business

called Evelyn's Freezer Fresh and that in 1967 she insured the trucks of the business through an insurance agent named David Silk. She further testified that the policies which she received were from a company known as United Firemen's Insurance Company.

Irene Markewych testified that she and her husband operated an insurance brokerage under the name of All Drivers Insurance, and that in 1967 she placed an insurance policy for one Jose Campos through the Valiant Insurance Agency. She further testified that the policy received by Campos was that of a United Firemen's Insurance Company, and that the policy premium was paid to the Valiant Agency.

Reed Ehrlich testified that he was president of the Public Mutual Fire Insurance Company in 1967; that the defendant was an agent for his company and was authorized to sell policies for Public Mutual until January 20, 1967; and that the defendant would have in his possession a supply of Public Mutual policies to type and issue. He further testified his records reflected that Public Mutual policies 109601 through 109700 were issued to an agency called the Jemco Insurance Company, but that the code number of the agency appears on his records as 9914, which is the agency code number for Automobile Insurance Markets. The witness identified Public Mutual policy 109693 with the name of United Firemen's Insurance Company pasted over the name of the Public Mutual Fire Insurance Company. The agency code number 9914 also appears on this policy.

Phillip Rapp testified that he operated an answering service at 64 Old Orchard Road in Skokie, Illinois, and that the defendant rented office space at that address. He further testified that his sister, Rose Rapp (since deceased), owned the Hallmark Press which also maintained an office in the same building. In 1967 he picked up materials for his sister at the Webber Printing Company, took them back in the form of a package to the Old Orchard address, and left the package on a desk in the office occupied by defendant. On cross-examination the witness stated that he left the package on a desk occupied by Hallmark Press and did not inspect the contents.

Melvin Webber, president of the Webber Printing Company, testified that after preliminary conversations with Rose Rapp she placed a printing order with his company on or about May 8, 1967. Along with the order Rose Rapp submitted an insurance policy to be reproduced, which was policy numbered 109693 with United Firemen's Insurance Company heading pasted over the top. Webber testified that a partial completion of the order was picked up at his company and the remainder when completed was delivered by K and R Delivery, Inc. He identified an invoice of his company showing that the customer who placed the order

was Hallmark Press, and that the order was to be drop-shipped to Automobile Insurance Markets, 10034 LaCrosse, Skokie, Illinois, in care of George Decker.

Donna Jiran, assistant to the president of K and R Delivery, Inc., testified that a drop-shipment is an order placed with a manufacturer by a supplier requesting delivery directly to supplier's customer with the supplier's name on the bill of lading. She identified a freight bill showing delivery of seven packages from Hallmark Press to Automobile Insurance Markets, 10034 LaCrosse, Skokie, in charge of George Decker.

Anthony Scafidi, an employee of K and R Delivery, Inc., testified that on May 31, 1967, he picked up a shipment at the Webber Printing Company and took it back to K and R Delivery's office. Donald John Carey, another employee, testified that he then delivered the same shipment to Automobile Insurance Markets, 10034 LaCrosse, Skokie, Illinois, and that the man who accepted delivery signed the freight bill as a receipt. The freight bill bears the signature of defendant, George Decker.

Gladys Leavitt, assistant cashier for the First National Bank of Lincolnwood, identified the bank signature card for the account maintained by Automobile Insurance Markets showing the signator for the account to be the defendant.

Ralph T. Kuhlman, vice president and controller of the First National Bank of Lincolnwood, identified a sole ownership resolution filed with the bank which stated that defendant was the sole owner of Automobile Insurance Markets. It was stipulated that the three checks drawn on the Valiant Insurance Agency premium fund trust account and made payable to defendant's agency were deposited in the account of Automobile Insurance Markets at the First National Bank of Lincolnwood.

At the conclusion of the State's case defendant did not testify or offer any evidence on his own behalf. We now proceed to a consideration of defendant's contentions upon appeal. His first contention is that the court erred in denying a portion of the motion of defendant for a bill of particulars and that thereby he was precluded from knowing specifically what he would be required to meet at the trial to enable him to adequately prepare his defense. Prior to trial defendant filed a written motion for a bill of particulars including in part a request for particulars as to the manner or scheme whereby he is alleged to have obtained control by deception over each of the checks for the payment of money set forth in the indictment, and to state the alleged specific consideration given or to be given by the defendant in exchange for each of said checks. The trial court sustained the refusal of the State to furnish the required particulars.

The Illinois statute providing for bill of particulars is set forth in the

Code of Criminal Procedures of 1963 (Ill. Rev. Stat. 1967, ch. 38, par. 111—6).

■■ The determination of whether a bill of particulars will be ordered upon the request of a defendant is left to the discretion of the trial court, and in the absence of a showing of an abuse of that discretion which results in injury to a defendant, the trial court's denial of particulars does not constitute error. (*People v. Brown* (1966), 68 Ill. App.2d 17.) The object or purpose of a bill of particulars is to supplement a sufficient indictment with more specificity of detail to enable a defendant to better understand the nature of the charges against him, or to better prepare a defense to the charges. (*People v. Patrick* (1967), 38 Ill.2d 255.) However, a defendant is not entitled to a general disclosure of evidence which the prosecution will present at trial, and a motion for a bill of particulars which attempts to do so in the guise of requesting facts omitted from the indictment and essential to the preparation of a defense should be denied. *People v. Diekelmann* (1937), 367 Ill. 372.

The Illinois Supreme Court sustained the denial of a bill of particulars in a prosecution for obtaining money by means of a confidence game and held that it was unnecessary to set out, either in an indictment or in a bill of particulars, the various devices and means resorted to by the defendants to obtain the confidence of the complaining witness. *People v. Weil* (1910), 244 Ill. 176.

■■ In the instant case the indictment and that portion of the bill of particulars as to which the State did comply, furnished the defendant with the name of the complaining witness, the check numbers over which he allegedly obtained control, their amounts and dates of issuance. The indictment and these disclosures were sufficient to inform the defendant of the specific transactions brought in question and as to which he was charged, and any further information as to the nature of the transactions would have entered into a disclosure of the State's evidence prior to trial. The trial court did not abuse its discretion in denying that portion of defendant's motion for a bill of particulars.

Defendant next contends that the trial court erred in refusing to strike the testimony of a witness who allegedly testified in indirect violation of an order excluding witnesses which was entered at the commencement of the trial. During the State's case-in-chief Robert Chapman testified that defendant informed him on two occasions that the United Firemen's policies he was issuing came from a Bernard Becker. Subsequently, the State called Bernard Becker as a witness. Although he had not previously attended the trial, Becker stated on cross-examination that shortly before testifying, the prosecutor told him the general nature

of the defendant's statements to Chapman as to the origin of the United Firemen's policies.

■■ The trial court denied defendant's motion to strike all of Becker's testimony in that the prosecutor indirectly violated the order excluding witnesses in informing Becker of Chapman's testimony. Assuming, *arguendo*, that the order excluding witnesses was thereby violated, the question of whether a witness who has violated an exclusion order should be permitted to testify is within the discretion of the trial court and its determination will not be disturbed unless a clear abuse of discretion is shown. (*People v. Gibson* (1969), 42 Ill.2d 519; *People v. Nelson* (1965), 33 Ill.2d 48; *People v. Marshall* (1966), 74 Ill.App.2d 472.) Other than the assertion of an indirect violation of the exclusion order, defendant has failed to show how the trial court abused its discretion in permitting Becker to testify, and in the absence of such a showing the contention must fail.

Defendant further contends that the evidence was insufficient to sustain the conviction. Three insufficiencies in the State's evidence are urged: that no ownership was proved in the funds transferred from the premium account of Valiant Insurance Agency to defendant; that defendant's knowledge of United Firemen's nonexistence was not proved; and that it was not shown that the printing of United Firemen's policies was ordered by defendant. We disagree with each of the three alleged insufficiencies.

■■ Section 15—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 15—2) defines an owner of property, as used in the theft statute, as follows:

> "* * * 'owner' means a person, other than the offender, who has possession of or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property."

The proof of specific ownership of property in the person named in the indictment is therefore unnecessary if it is shown that the named person had some possessory interest in the property at the time of the offense. (*People v. Dell* (1966), 77 Ill.App.2d 318.) In the instant case Michael Michalek testified that he and his wife, Loretta Hedrick, as co-partners doing business as Valiant Insurance Agency, maintained a premium fund trust account for segregating premium funds to be paid to various insurance carriers for policies of insurance issued by those companies. The Illinois Insurance Code (Ill. Rev. Stat. 1967, ch. 73, par. 1065.52) requires insurance brokers and agents to maintain such funds in a fiduciary capacity. A broker or agent stands as a trustee in relation to the funds

contained in a premium fund trust account. (*Robert P. Butts & Co. v. Estate of Butts* (1970), 119 Ill.App.2d 242.) It therefore follows that Michael Michalek and Loretta Hedrick, as co-partners in the Valiant Insurance Agency, were co-trustees of the premium fund trust account and had sufficient possessory interest in the funds represented by the three checks obtained by defendant to qualify as the owners at the time of the offense.

Defendant's knowledge of the nonexistence of United Firemen's Insurance Company and his role in ordering the printing of the United Firemen's policies were factual determinations for the jury. The jury's determination cannot be disturbed unless it is so palpably contrary to the weight of the evidence or so unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Wilson* (1970), 45 Ill.2d 581.

Testimony was presented at trial that there was no United Fireman's Insurance Company, a Delaware corporation, incorporated in Delaware nor licensed to do business in either New York or Illinois. Michael Michalek testified that insurance orders were placed with defendant by telephone and that United Firemen's policies were then received by mail from defendant. An Illinois State Department of Insurance representative testified that the defendant told him the United Firemen's policies in his possession had been acquired through Bernard Becker. Becker testified that he had not supplied United Firemen's policies to defendant but had in fact ordered such policies for his own customers through the defendant.

■■ Testimony was also presented that defendant had in his possession a certain numbered policy of Public Mutual Fire Insurance Company which was subsequently used as a model for printing the United Firemen's policies by pasting the United Firemen's name over the Public Mutual name. The printing order had been placed by defendant's landlord, since deceased. A partial completion of the printing order was left at the business office of defendant. The balance of the order was delivered to the home of defendant and a receipt for delivery bearing his signature was received in evidence. The three checks drawn on the Valiant Agency premium fund trust account and representing premium payments for United Firemen's policies were deposited in defendant's business account at his bank, over which account he had exclusive control. Upon full consideration of the foregoing, there was sufficient evidence from which the jury could determine that defendant had knowledge of the United Firemen's nonexistence and that he participated in ordering the printing of United Firemen's policies.

Defendant further contends that the closing argument of the prosecutor was prejudicial in two instances. In the State's case-in-chief Evelyn

Buchner testified that she had purchased one of the United Firemen's policies from an agency which in turn had placed the insurance through Valiant in order to insure a fleet of trucks used in her business. The State also introduced other United Firemen's policies for automobile and truck coverage which had been sold to customers of the Valiant Agency. In closing argument the prosecutor focused upon defendant's activities as they related to the purchasers of the policies. The prosecutor stated, "But what about the people who are running around in their cars?" Defendant objected that there was no evidence of anyone driving around; which objection was sustained. The prosecutor then said, "What about the people who had their cars and thought they had insurance?" Defendant's objection to this remark was overruled as being a fair inference from the evidence.

██ It is well settled that closing arguments of a prosecutor, based upon proven facts and circumstances or upon legitimate inferences therefrom, do not exceed the bounds of proper debate and are not to be discountenanced by the courts. (*People v. Miller* (1958), 13 Ill.2d 84; *People v. Howe* (1940), 375 Ill. 130; *People v. Conrad* (1967), 81 Ill.App.2d 34.) In the instant case, even though the first remark of the prosecutor to which defendant took objection was ruled improper by the trial court, we do not believe that either of the remarks transcended the bounds of fair comment upon the evidence or legitimate inferences therefrom. Both testimonial and documentary evidence was presented at trial that defendant had issued United Firemen's policies purporting to insure the vehicles of customers of the Valiant Agency and other agencies. The comment that those people who had purchased such insurance were driving their vehicles during the policy term was a proper inference to be drawn from the evidence. The subsequent remark by the prosecutor concerning people who had cars and thought they had insurance coverage was nothing more than a comment upon the evidence itself. Neither of these remarks was improper or prejudicial to the defendant.

Finally, it is contended by defendant that the trial court erred in refusing two of the tendered defense instructions. Defendant's Instruction No. 7, which was tendered and refused, provided:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> You should not find the defendant guilty unless the facts and

circumstances proved exclude every reasonable theory of innocence." (IPI-Criminal, No. 3.02.)

The first paragraph of Defendant's Instruction No. 7 was given to the jury as People's Instruction No. 6.

Illinois Supreme Court Rule 451(a) provides that whenever an IPI-Criminal instruction is applicable to the facts of a case the instruction shall be given, unless the trial court determines that it does not accurately state the law. (Ill. Rev. Stat. 1969, ch. 110A, par. 451(a).) The Committee Note to IPI-Criminal Instruction 3.02 states that the second paragraph as to the exclusion of every reasonably theory of innocence "should be given only in cases where the proof of guilt is *entirely* circumstantial." Defendant directs this court's attention to several remarks made by the prosecutor during the course of trial that the State's evidence in this case was entirely circumstantial. However, we believe that the prosecutor misapprehended the nature of some of the evidence introduced by the State, and we do not feel bound to adopt his characterization of the evidence. The essential elements which must be proved to sustain a charge of theft by deception are that a named person was the owner of a specified property; that the accused knowingly obtained by deception control over that property; and that the accused acted with the intent to permanently deprive the named owner of the use and benefit of that property.

■■ In the instant case, direct evidence was presented by the State to prove the first two elements. Michael Michalek testified as to possessory control over the funds represented by the three checks sent to defendant. Two employees of the bank in which defendant maintained his business account identified the sole ownership resolution and the signature card filed with the bank. It was stipulated that the three checks sent to defendant by the Valiant Agency were deposited in defendant's business account. The three checks, as well as the bank deposit tickets listing the checks, were introduced into evidence. The evidence not being entirely circumstantial, Defendant's Instruction No. 7 was properly refused.

■■ Defendant's Instruction No. 8, which was tendered and refused, provided:

"If two conclusions can reasonably be drawn from the evidence, one of innocence and one of guilt, the jury should adopt the one of innocence." Not in IPI-Criminal.

Defendant urges that since there was no direct evidence tending to show his knowledge of the nonexistence of the United Firemen's Insurance Company, the conclusion could also be reached that defendant was un-

aware of its nonexistence, and that therefore this is a case where opposing theories of guilt or innocence arise out of the same facts. The instruction is not contained in IPI-Criminal and has been held proper only when the opposing theories of guilt and innocence arise out of the same proven facts. (*People v. Rhodes* (1969), 41 Ill.2d 494; *People v. Lefler* (1967), 38 Ill.2d 216; *People v. Lexow* (1962), 23 Ill.2d 541; *People v. Malmenato* (1958), 14 Ill.2d 52.) In the instant case, defendant did not testify nor offer any defense as to a separate theory, nor are such opposing theories presented. The jury was adequately instructed as to circumstantial evidence, the requirements of proof beyond a reasonable doubt, and the presumption of innocence. Defendant was not entitled to the two theory instruction or to repetitious instruction. (*People v. Richards* (1970), 120 Ill.App.2d 313.) Defendant's Instruction No. 8 was properly refused.

For all of the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.