THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNY TRIMBLE, JR., Defendant-Appellant.

(No. 60689;

First District (2nd Division)—March 25, 1975.

STAMOS, J., specially concurring.

Paul Bradley and James R. Streicker, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence. J. Bolon and Scott W. Petersen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Johnny Trimble, Jr., defendant, was charged with the offense of armed robbery in violation of section 18—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). At trial in February, 1974, the jury found

defendant guilty and, after a hearing in aggravation and mitigation, the trial court sentenced him to a term of not less than 4 years nor more than 7 years in the State penitentiary. On appeal, defendant contends that it was reversible error to admit in evidence the testimony of the arresting officers to the effect that the complaining witness had identified defendant to them as the man who had robbed her and also that she had identified her keys; and that the prosecutor's closing argument was contrary to law in two respects and resulted in reversible error.

Mrs. Denora Parker, the complaining witness, testified on behalf of the State and said that at approximately 1:10 P.M. on June 12, 1973, she parked her car in the parking lot of Wieboldt's Department Store, 6320 South Peoria Street, Chicago; that as she was rolling up the window on the passenger side she bent over to pick up her purse and some shoes from the floor of the car when she felt a "sharp object" in her side; and that as she straightened up in her seat, she felt an arm slide around her neck and saw defendant, whom she identified in open court, standing next to her car. Mrs. Parker said he was dressed in a short-sleeved black shirt with white buttons, black trousers and dark shoes; and that he was accompanied by a man who stood beside defendant and who was wearing a maroon suit and a bright yellow turban.

Mrs. Parker further testified that defendant asked for some money; that she opened her purse and showed him a cigarette case in which she kept her money; that defendant and the other man both had their fingers in her purse, taking out money; and that defendant took $24 in currency and the other man took Mrs. Parker's change and a key. Mrs. Parker said defendant gave some money to the other man and he then tried to remove the keys from the ignition; that she struggled in an attempt to retain the keys, but was forced to release them; and that as defendant started to walk off with the keys, Mrs. Parker asked him to drop them.

Mrs. Parker said she got out of the car and as she looked over her shoulder she saw a marked squad car pull into the parking lot. She testified defendant began to run, with the other man running along with him; and that they ran toward 63rd Street, at which time she lost sight of them. Mrs. Parker said she saw the squad car back out of the parking lot, go down Peoria, turn on 63rd and head west.

Mrs. Parker said that approximately 5 minutes later the squad car returned with defendant sitting in the back seat; and that she ran to the squad car and told the police that defendant and another man had taken her money and keys. Mrs. Parker further testified defendant told her the keys were in the weeds. She said defendant and the police officers read a card to defendant; that the police officers put handcuffs

on him; and that defendant helped them look for the keys in the weeds. Mrs. Parker said that at the time defendant was perspiring and his shirt was unbuttoned.

Mrs. Parker showed the police the knife defendant had thrown on the floor of the back seat of her car. She identified People's Exhibit No. 1 for Identification as the knife defendant had put to her side earlier that day and which was lying on the floor of the back seat of her car. Mrs. Parker said that she, the police officers, and some passersby looked for her keys; that a little boy found them in the weeds and gave them to her. Mrs. Parker identified People's Exhibit No. 2 for Identification as her keys.

Mrs. Parker said that at the time of the incident she was "awful nervous" and became angry when defendant took her keys. She also stated that she turned and looked into defendant's face as he was standing beside the car. Mrs. Parker told the police that defendant was 21 or 22 years old, approximately 6 feet tall, weighed between 155 to 170 pounds and was light skinned.

William R. Winters, a police officer for the city of Chicago, testified on behalf of the State and said that on June 12, 1973, at approximately 1:10 P.M., he and his partner, Police Officer Charles Imposino, were patrolling the mall area at 63rd and Halsted in a marked squad car; that he noticed two men on the driver's side of a small car; that one of the men had the upper part of his body inside the window and another man wearing a yellow turban was standing to his left, a little to the rear; that the man in the yellow turban looked at Winters; that defendant then pulled himself out of the car and they both started running north from the parking lot; that Winters got out of the squad car and started chasing them through a vacant lot; that when the men reached 63rd Street they turned to the left and went west on 63rd; that when Winters came round the corner of 63rd Street, he saw the two men and he pursued them down 63rd Street; and that "for maybe two seconds" he lost sight of them. Winters said that when the men got almost to Morgan Street, Police Officer Imposino pulled up in the squad car and Winters jumped in and they continued the chase west on 63rd; that the man in the yellow turban ran south on Morgan Street and defendant ran north on Morgan about 125 feet to the alley and then he turned left and ran west in the alley; that defendant then ran into Major Motors Garage and back out on 63rd Street, then he went west to Carpenter Street and south on Carpenter; that as defendant got under the "El" structure he took off his shirt and threw it in the weeds under the tracks; and that he then began to walk. Winters testified he got out of his squad car and began walking behind defendant and Imposino pulled

the squad car up ahead of defendant and jumped out so that both Winters and Imposino were walking toward defendant in each direction. Winters said he asked defendant why he was running but defendant was so exhausted and out of breath he could not answer; that he was sweating profusely; and that the police officers took defendant back to the location of the shirt and told him to put the shirt on, which he did. Winters identified defendant in open court as the man he apprehended on Carpenter Street. Winters further testified that the police officers put defendant in the squad car and drove back to the parking lot at 6320 Peoria and parked a few car lengths behind a small car that was parked in the lot where Winters first observed defendant; and that a woman ran over to the car, very excited, started screaming at defendant and said he was the man that robbed her. Winters said defendant told Mrs. Parker that her keys were "over there in the weeds."

Winters further testified he told defendant to get out of the car; that he was under arrest; and that he handcuffed defendant and read him his rights. Winters said Mrs. Parker called him over to her automobile and pointed out a knife lying on the rear floor. They went into the vacant lot and defendant pointed to some bushes along the building as the spot he threw the keys; and that as they were searching, a little boy in the group found the keys and gave them to Mrs. Parker. On cross-examination, Winters said he searched defendant but found no money on him.

Police Officer Charles Imposino, testifying on behalf of the State, substantiated the testimony of Police Office Winters.

Defendant testified he did not rob Denora Parker with a weapon on June 12, 1973. He said that for the last 9 months he was employed by Southwestern Dodge, located in the 7300 block on South Western Avenue, as a porter and maintenance man. On cross-examination, defendant said that he was 22 years old; that on June 12, 1973, he was employed by Ed's Texaco, 5015 West Touhy Avenue, Lincolnwood. Defendant said that on June 12, 1973, at about 1:20 P.M., he was at the Major Motors pricing a radiator hose for a 1958 Oldsmobile. He said he was dressed in a long-sleeved black shirt, black slacks, and black shoes. Defendant further testified that the police officers stopped him on Carpenter Street, put him in the squad car and took him to a parking lot; that when they got to the parking lot, a lady looked in the car and said: "He got on black shirt and black pants. They look like the one." Defendant said the police officers took her over to her car and started to talk to her; that then the police officers took him out of the car and told him they were going to make him look for some car keys; that he was scared and said nothing; that the police officers took him to a big lot and told

him to look for some car keys but defendant told the police he didn't know anything about any car keys; and that he did not see anybody find any keys.

Defendant testified that he did not order a radiator hose but just priced it. He said that at the time of the arrest his car was parked on 65th Street near Carpenter. Defendant said he told the police where the car was parked but they did not pay any attention and did not drive over there. Defendant said he got the car from 65th Street about a month later, after he got out of jail; and that his mother went with him when he got the car.

■■ Defendant argues it was error for the arresting officers to testify that Mrs. Parker identified defendant as the man who robbed her and, also, that she identified a set of keys as those which defendant had taken from her. However, no objection to this testimony was made by defendant in the trial court, and, therefore, the issue has been waived for the purpose of appeal. The law is clear that one cannot on appeal raise the issue of the admissibility of evidence where there has not been an objection to its admission during the trial. (*People v. Linus*, 48 Ill.2d 349, 355, 270 N.E.2d 12; *People v. Smith*, 17 Ill.App.3d 494, 496, 308 N.E.2d 257; *People v. Trenter*, 7 Ill.App.3d 460, 288 N.E.2d 119.) In *People v. Henderson*, 2 Ill.App.3d 401, 276 N.E.2d 372, the court said (2 Ill.App.3d 401, 406):

> "It is fundamental and basic that this court can review only errors committed at the trial. Where no objection is raised, error, if any exists, has been waived. Thus, in the case at bar, claims such as impropriety in use of hearsay testimony and unsworn testimony may not be raised for the first time in his court on appeal. Unless timely objection to incompetent evidence is made at the trial level, the point may not be raised on appeal."

Further, although it may have been error for the State to introduce the testimony of the arresting officers as to the identification of defendant by Mrs. Parker, such testimony was merely cumulative of the previous testimony of Mrs. Parker and, therefore, not prejudicial to defendant. *People v. Lowe*, 112 Ill.App.2d 399, 251 N.E.2d 329, *petition for leave to appeal denied*, 42 Ill.2d 584; *People v. Wright*, 124 Ill.App.2d 223, 232, 260 N.E. 2d 265; *People v. Davis*, 20 Ill.App.3d 948, 314 N.E.2d 723.

■■ Defendant argues that the foregoing principles of law should not apply in the case at bar because Mrs. Parker's identification of defendant "was something less than positive, and it becomes apparent that the hearsay statements of the officers were offered to bolster the disputed testimony of the complaining witness"; because the testimony of the arresting officer was, in certain respects, inherently unbelievable; and

because the identification procedure was suggestive. The record does not sustain the contentions of defendant. The identification of defendant by Mrs. Parker was positive. She had approximately 3 to 4 minutes to study defendant during the course of the armed robbery. Her testimony was credible and unimpeached. In addition to the testimony of Mrs. Parker, there was the testimony of the police officers to the effect that they spotted two suspicious men next to Mrs. Parker's car; and that they pursued and captured defendant, who was dressed in black. The police officers returned defendant to the scene of the robbery where he said the keys were "over there in the weeds."

■■■ The return of defendant to the scene of the robbery and the "on the scene" identification were not unnecessarily suggestive. (*People v. Elam*, 50 Ill.2d 214, 278 N.E.2d 76; *People v. Young*, 46 Ill.2d 82, 263 N.E.2d 72; *People v. Ellis*, 24 Ill.App.3d 870, 321 N.E.2d 722.) Further, it was shown by clear and convincing evidence that the in-court identification had an independent origin arising from other uninfluenced observations of defendant. *People v. Bey*, 51 Ill.2d 262, 281 N.E.2d 638.

■■ The law is clear that the positive identification by one witness is sufficient to sustain a conviction, even thought it is contradicted by the accused. (*People v. Griffin*, 12 Ill.App.3d 193, 297 N.E.2d 770; *People v. Taylor*, 18 Ill.App.3d 367, 309 N.E.2d 642.) In the case at bar, Mrs. Parker's identification of defendant was positive, credible and corroborated by the testimony of the police officers. Defendant's flight from the scene of the alleged robbery also raises an inference of his guilt. (*People v. Harris*, 52 Ill.2d 558, 288 N.E.2d 385; *People v. Montgomery*, 16 Ill. App.3d 127, 305 N.E.2d 627; *People v. Rucker*, 9 Ill.App.3d 297, 292 N.E. 2d 102.) Here, contrary to defendant's contention that the testimony of the police officers was "inherently unbelievable," the police officers' testimony as to the pursuit and capture of defendant was reasonable and uncontradicted by defendant.

■■ Defendant also argues that the testimony of Mrs. Parker "was clearly contradicted by the defendant's testimony"; that he did not rob Mrs. Parker and did not participate in the offense. This raises a question as to the credibility of the witnesses. In a jury trial, the credibility of the witnesses is for the jury to determine and its determination will not be disturbed unless it is based upon evidence which is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People v. Ellis*, 53 Ill.2d 390, 395, 292 N.E.2d 728, 730; *People v. Riles*, 10 Ill.App.3d 772, 295 N.E.2d 234; *People v. Smith*, 20 Ill.App.3d 756, 314 N.E.2d 543.) The jury chose to believe the testimony of the State's witnesses, and from a review of the entire record it cannot be said that the jury's determination was erroneous.

Even if it is conceded that the testimony of the police officers as to the identification of defendant by the complaining witness was hearsay, it was merely cumulative of the previous testimony of Mrs. Parker and, therefore, was not prejudicial to defendant. Contrary to defendant's contentions, the record discloses that defendant was proven guilty beyond a reasonable doubt.

Defendant also argues it was reversible error for the prosecutor to state during his closing argument that "I know he [the defendant] did it * * *." The portion of the closing argument in which the above quoted statement was made is as follows:

> "Counsel says but Johnny Trimble had no motive to do this. Johnny Trimble had a job. You heard Johnny Trimble tell you that he had no money on him in the date in question. He told you that himself. And the officers told you that. You are going to get an instruction in a few moments from his Honor, very clear instruction, very simple. It's not the State's burden to prove motive. Maybe he didn't want money. Maybe he wanted the car. Maybe he just wanted the fun of sticking up a lady on the street. That's not my problem to prove motive. I don't know why he did it. I know he did it, and it's against the law, and it's against the peace and dignity of each and every one of you who live in this City. And if our City is going to be safe, people like Johnny Trimble got to be told by citizens like yourselves—
>
> MR. RODGON [Counsel for defendant]: Objection.
>
> THE COURT: Objection sustained. Not proper."

■■■ From a reading of the foregoing, it is clear that the statement "I know he did it" should be read with the balance of the sentence, and that the prosecutor was arguing for effective law enforcement. A prosecutor in his closing argument can apprise the jury of the evil results of crime, ways of fearless administration of the law, and denounce the defendant's wickedness, when such comments are based on facts in the record or may be fairly inferred therefrom. (*People v. Anderson*, 48 Ill.2d 488, 497, 272 N.E.2d 18; *People v. Taylor*, 18 Ill.App.3d 367, 309 N.E.2d 642.) Here, the jury was requested to consider the possibility that evil results may arise if defendant was released. Since such remarks referred to the evidence and inferences that could be drawn therefrom, the prosecutor's closing argument was not improper. (*People v. Durso*, 40 Ill. 2d 242, 239 N.E.2d 842.) Further, a prosecutor is permitted to argue or express his opinion that defendant is guilty where it is apparent that such an opinion is based on the evidence. *People v. Prim*, 53 Ill.2d 62, 77, 289 N.E.2d 601; *People v. Decker*, 19 Ill.App.3d 86, 311 N.E.2d 228.

The comments of the prosecutor are based upon the evidence or upon

the inferences to be drawn therefrom. They do not exceed the grounds of proper debate and are not expressions of the prosecutor's unsupported personal opinion.

Defendant finally argues that it was reversible error for the prosecutor to argue defendant's motive to the jury, when the jury was subsequently instructed that the State did not have to prove motive.

The comments of the assistant State's attorney, set out above, to the effect that it was not his "problem to prove motive" were in reply to the following comments of defendant's counsel:

> "Now, you heard Johnny Trimble testify. Johnny Trimble has a job. He works. He works as a car hiker. At one time he was working at his uncle's gas station. That's Mr. Vance. The people of the State of Illinois haven't been able to contradict anything like that. Why would he go commit an armed robbery for $24 bucks if he has a job? And what's the motivation? I mean he is going to risk his future, his freedom, for a lousy $24? I don't know. But a man who has a job, why would he do it for $24? And that's one of the things you have to decide too."

■■ The law is clear that one cannot provoke a reply to his own argument and then claim error. (*People v. Anderson,* 48 Ill.2d 488, 498, 272 N.E.2d 18; *People v. Zuniga,* 53 Ill.2d 550, 558, 293 N.E.2d 595.) Since the prosecutor's comments as to defendant's motive was in response to the motive argument by counsel for defendant, his comments were proper.

Defendant relies on *People v. Manzella,* 56 Ill.2d 187, 306 N.E.2d 16, where a motive instruction was given to the jury after the prosecutor had commented on motive during his final argument. Although the court stated (56 Ill.2d 187, 198-200) that the comment by the State on the motive which caused the defendant to commit the offenses was improper and constituted error, it was harmless error. Likewise, in the case at bar, even if it could be said that the comments of the prosecutor "constituted error" it did not constitute reversible error.

There is no reversible error in the record and, therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

LEIGHTON, J., concurs.

Mr. JUSTICE STAMOS, specially concurring:

This is a frivolous appeal. It only serves to distract this court from attending to litigation that raises a substantial question regarding a fair trial.