THE STATE OF KANSAS V. CHARLES METSCH.

1. FALSE PRETENSES, *to be Negatived.* In a prosecution for obtaining money under false pretenses, it is necessary for the state to negative specifically the false pretenses relied on to sustain the charge.

2. ———— No pretenses other than those set out in the information can form a basis for a verdict of conviction.

3. ———— *What The State Must Show.* To sustain the charge of obtaining money under false pretenses, it is essential to show not only that false pretenses were made, but also that the person who parted with the money relied upon the false pretenses made, and that the money was obtained by reason thereof.

4. ———— The testimony in the record examined, and held insufficient to sustain the conviction.

*Appeal from Ellsworth District Court.*

PROSECUTION for obtaining money under false pretenses. Verdict, guilty; new trial denied. May 13, 1887, the court sentenced the defendant *Metsch* to imprisonment for two years in the state penitentiary, and to pay the costs of the prosecution. He appeals. The facts are sufficiently stated in the opinion.

*S. P. Harrison,* for appellant; *Irwin Taylor,* of counsel.

*S. B. Bradford,* attorney general, and *E. A. Austin,* for The State.

The opinion of the court was delivered by

JOHNSTON, J.: Charles Metsch was prosecuted in the district court of Ellsworth county, upon a charge of obtaining money under false pretenses from the State Savings Association of Ellsworth, and was convicted. The information charged that he obtained $246.80 from the association upon the security given by chattel mortgages upon one bay horse ten years old, three cows, one bay horse five years old, one bay gelding three years old, one bay gelding four years old, one bay horse seven years old, one bay horse nine years old, one sorrel mare eight

years old, and one sorrel gelding six years old. It is alleged that in negotiating the loans he pretended that he was the owner of the horses and cows described, and that they were kept on the farm of one Boggs, about four and one-half miles from the city of Ellsworth, and that the mortgages executed by him as security for the loans were valid. It is alleged, however, that Metsch was not the owner of the horses or the cows, and that his representations regarding them were designedly and wholly false. At the trial it was disclosed that three mortgages were executed by Metsch to the State Savings Association, which were designated as "A," "B," and "C." The state did not put in evidence the mortgages "B" and "C," nor offer evidence of any false pretenses in obtaining the money secured by those mortgages. The prosecution relied only on the pretenses connected with the "A" mortgage, which was given on September 1, 1886, to secure the payment of $43.25, and the only property therein described was, "one bay horse ten years old, weight about twelve hundred pounds, white in forehead, and named Jim," and "three cows of different ages, sizes and colors, now kept on the T. B. Boggs farm, four and one-half miles southeast of Ellsworth city."

We are of the opinion that the conviction should not stand. The testimony brought up in the record, (and there is a statement that it contains all that was given,) is clearly insufficient to sustain the verdict of the jury. There is no testimony that Metsch made any representations or pretenses in negotiating the mortgages which have been mentioned. Dolde, the secretary of the association, testified that he negotiated and filled out the "B" and "C" mortgages, and loaned the defendant money on them. He also testified that he inquired of the defendant whether he owned the property, and whether there were any liens existing against it; but in no case does he state what reply, if any, was made by Metsch to these inquiries. No other witness undertook to testify in relation to obtaining the money. Then, again, there is no testimony that the $43.25, borrowed upon the security of the "A" mortgage, was obtained upon the strength of any repre-

4. Evidence insufficient to sustain conviction.

sentations or pretenses made when it was borrowed.   Indeed, it does not appear, except by the remotest inference, that Metsch obtained any money upon the "A" mortgage.   The witness Dolde stated that he loaned him money upon chattel mortgages, but the transactions that he had with the defendant were loaning upon the security of the "B" and "C" mortgages, which are entirely out of the case.   He stated that a Mr. Hale made out the "A" mortgage, but Mr. Hale did not testify in the case, nor did anyone else testify that the $43.25, which purported to have been secured by the "A" mortgage, was paid by reason of any representation or pretense made by the accused.   To sustain the charge, it is essential not only to show that the false representations and pretenses were made, but it must appear that the association relied upon those pretenses, and that the money was obtained by reason thereof.   Proof that they relied upon, and paid out money on the pretenses made to them in other transactions, will not supply the want of proof upon the individual transaction on which the verdict is based.

3. What the state must show.

The testimony is singularly indefinite and incomplete in other respects.   The only pretenses set out in the information were, that the mortgage was valid, that he was the owner of the horse and three cows, and that they were kept on the Boggs farm.   In the "A" mortgage it was represented that he owned the property, and that there was no other mortgage or lien upon it; and the representation in relation to other liens seems to have been mostly relied upon by the prosecution.   But the information does not charge that he claimed or pretended that the property was free from incumbrance when the mortgage in question was made, and the only pretenses upon which he could be tried or convicted were those charged in the information.   But if the representation in the mortgage that the property was free from incumbrance should be treated as an alleged pretense, there would still be a failure of proof.   It is conceded that Metsch was the owner of the horse described in the mortgage.   The contention is that it was mortgaged to G. W.

2. Other pretenses, not basis for conviction.

Clawson, on July 10, 1886, nearly two months before the execution of the mortgage in question. The only proof in support of this contention was that given by the register of deeds, who testified that a mortgage dated July 10, 1886, from Metsch to Clawson on "one bay horse, eight years old, weight about eleven hundred and fifty pounds," was filed in his office, and that no satisfaction of the mortgage had been entered of record. This description does not correspond with the description of the horse given in the mortgage we are considering. He was there described as "one bay horse, ten years old, weight about twelve hundred pounds, white in forehead, named Jim." The horse mortgaged to Clawson appears to have been two years younger, with no white on its forehead, and fifty pounds lighter in weight. This proof certainly fails to show that the "Jim" horse was the one which had been mortgaged to Clawson. The alleged pretense in regard to the cows was that they were owned by him and kept upon the Boggs farm. The proof regarding them is equally unsatisfactory and incomplete. The only witness who undertook to negative the alleged pretense, was one Loliker, who resided upon the Boggs farm from May until sometime in September, 1886. He stated that he did not think there were any cows kept there by Metsch at that time. He admitted, however, that along about the first of September he was away from there a week at a time, and that Metsch was in the habit of trading horses and cattle a great deal, and that he may have owned and had the cows there without his knowledge. While it appears that he was trading in cattle a great deal, there was no attempt to show that he did not own the cows and hold them in other parts of the county. Besides, the information does not specifically negative the pretense that the property was located upon the Boggs farm. After specially averring the pretenses, the information specifically negatives the representation that he was the owner of the horse and cows, but 1. False pretenses, to be negatived. does not negative the alleged representation that they were kept upon the Boggs farm. The false pretenses relied on to sustain the charge should be specif-

15 — 37 KAS.

ically negatived in the information. (*Keller v. The State*, 51 Ind. 111; *The State v. Bradley*, 68 Mo. 140; 2 Wharton's Crim. Law, §1224.) As there was no negation of the alleged pretense that the property was kept on the Boggs farm, the testimony of Loliker is rendered less important.

We think the testimony, viewed in the most favorable light for the prosecution, falls far short of justifying the conviction, and hence the judgment must be reversed, and the cause remanded.

All the Justices concurring.