No. 41,023

THE STATE OF KANSAS, *Appellee,* v. MARIO E. VISCO, *Appellant.*

(331 P. 2d 318)

Opinion filed November 8, 1958.

*William A. Smith,* of Topeka, argued the cause, and *David Carson* and *Jack Dear,* both of Kansas City, and *James H. Bradley,* of Olathe, were with him on the briefs for the appellant.

*John J. Gardner,* County Attorney, argued the cause, and *Herbert W. Walton,* Assistant County Attorney, *John Anderson, Jr.,* Attorney General, and *Robert Hoffman,* Assistant Attorney General, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: In this case William Daniel Hanley and Mario E. Visco were charged with the offense of attempting to obtain money by false pretenses, in violation of G. S. 1949, 21-101 and 21-551. A severance was granted, and defendant Visco appeals from his conviction.

Because of questions later mentioned, the information, omitting formal parts, which was filed on September 3, 1957, is set out:

"I, John J. Gardner the undersigned, County Attorney of said County, in the name, and by the authority, and on behalf of the State of Kansas, come now here, and give the Court to understand and be informed that on the 21st day of June A. D., 1957, in said County of Johnson, and State of Kansas, one William Daniel Hanley and Mario E. Visco did then and there Unlawfully, Feloniously, designedly and with intent to cheat and defraud Robert McEndree,

attempt to obtain from the said Robert McEndree United States money in the amount of $125.00 by means of false and fraudulent representation by falsely representing themselves to be agents and employees of a publication named as 'Labor Digest' and under this guise, attempting to sell advertising in said publication when in reality the said 'Labor Digest' they purport to represent does not exist."

The story established by the state's evidence is substantially as follows:

Robert McEndree was the owner and proprietor of an automobile body repair shop at 11411 West 75th Street in Shawnee. The shop specialized in body and fender work. About nine o'clock on the morning of June 21, 1957, McEndree received a telephone call at his shop from a man who gave the name of Gray. Gray asked McEndree if he would be in shape to handle a four-year contract to handle and take care of all motor vehicles for the state of Kansas. McEndree replied that he probably could. Gray wanted to know if he had sufficient money and space for such an operation and McEndree replied that he could make arrangements for it. Gray then told McEndree that he, Gray, could make arrangements for such a contract as he knew a man that could make it possible, and that it would be profitable for everyone. Gray further stated that he would need some of McEndree's letterheads and billheads to show the man what the shop was like and how it was set up. McEndree said that he would get them ready for him. Toward the close of the conversation Gray mentioned that if McEndree wanted the contract he, Gray, thought it would be no more than right that McEndree should advertise in a paper called the "Labor Digest" which Gray's boys were putting out. He went into some detail about the sizes of advertising McEndree could take and thought it would be right if McEndree took an ad for a half page, which would cost $125. McEndree agreed to purchase such an ad and Gray replied that he would send out a man as soon as possible to pick up the letterheads and check so that he could turn them over to the man to get the contract fixed. Gray further mentioned that his boys who were publishing the "Labor Digest" would appreciate the half-page ad.

About three o'clock that afternoon a man by the name of Hanley came out to the McEndree body shop and told McEndree he had come to pick up the check for $125 pursuant to the telephone conversation McEndree had had that morning with Gray. He presented McEndree a bill for the advertising. This bill read:

564

"LABOR DIGEST

2441 Troost      June 21 1957      VA 1-9308
Bob McEndree
Bob's Body Shop
11411 W. 75th st.
Shawnee Kansas

Advertising  .. .... ..... ...... ....... $125.00
½ Page"

It. was established at the trial, and is not disputed, that at the time in question the purported address, "2441 Troost," of the "Labor Digest" was the address of an apartment house in Kansas City, Missouri, and that there were no printing presses or any evidence whatsoever of the "Labor Digest" having an office at that address.

It was further established at the trial, and is not disputed, that at the time in question the purported telephone number, "VA 1-9308," of the "Labor Digest" was the number of the telephone in a public pay-telephone booth adjacent to a supermarket in Kansas City, Missouri.

After Hanley presented this bill to McEndree, McEndree said that he would get the letterheads and check, but instead absented himself for a moment and called the sheriff's office. Officers arrived on the scene and arrested Hanley.

At this point it should be mentioned that McEndree, who formerly was a member of the sheriff's patrol and who also was a member of the "Better Business Bureau" in the area, concluded from the first that such a plan or scheme as suggested by Gray, whereby Gray, through contacts, could obtain for him all of the automobile body repair work for the state of Kansas, was utterly outlandish and completely phony and bogus.

About three-thirty that afternoon McEndree received another call from Gray in which Gray wanted to know if the man whom he had sent out to pick up the letterheads and check had arrived. McEndree told Gray that an intoxicated man was outside his establishment, whereupon Gray said that he doubted that he (the man) was drunk but that he might be sick. He then suggested that McEndree send Hanley home in a taxicab. McEndree agreed and Gray said that he would call back.

About thirty minutes later Gray again called McEndree and inquired whether he had sent Hanley home in a cab, to which McEndree replied that he had. Gray then stated that Hanley had been checked into a hospital; that he was sorry he had sent such a

person out, but that he would send his private secretary out later that day to pick up the check and letterheads.

It is to be noted that at the time this conversation took place Hanley was in the county jail.

About nine o'clock that night a woman giving the name of Ann Harris came to the McEndree body shop. An officer had observed her get out of a car in the driveway of a residence next door. She told McEndree that she had been sent out to pick up the check and letterheads concerning which he had received telephone calls. They went into his office and McEndree wrote out and gave her a check for $125 payable to the order of "Labor Digest." She took the check and started to walk away from the shop but was arrested immediately. She told the officers that a couple had brought her out to the shop and that she was a stranger in the neighborhood. She denied knowing a man by the name of Visco or that he had brought her to the shop.

At about this time the car that brought Ann to the body shop started to take off. The officers stopped it and found the defendant Visco behind the wheel. He told the officers that he had just stopped there to light a cigarette and denied that he had brought a woman with him. After they told him they had observed Ann get out of his car he admitted that he had brought her and stated that "he didn't want any trouble, and that he would like to get out of it the best he could." He further told the officers that he was on parole out of Chicago on a "confidence game," and that "it would be worth quite a bit to him if he wasn't taken to jail." The officers then took defendant into the body shop and he told Ann that there was "no sense in lying about it because the officers had seen them." Defendant's car was searched and in it were found some "Labor Digest" blank forms.

McEndree identified defendant's voice as being the voice of "Gray" who had called him several times previously that day. Testimony of the managing editors of labor publications in the Kansas City area was to the effect no such publication as the "Labor Digest" was in existence.

The defendant offered no evidence, and the jury returned a verdict of guilty as charged. Various motions, including one for a new trial, were overruled, and defendant, having twice previously been convicted, was sentenced to confinement in the penitentiary under the habitual criminal law.

Defendant assigns sixteen specifications of error, but in his brief argues four questions, namely—error (1) in overruling his motion to quash the information; (2) in overruling his motion for discharge and his demurrer to the state's opening statement; (3) in overruling his motion for a directed verdict and his demurrer to the state's evidence, and (4) in overruling his motion to set aside the verdict and for a new trial because of erroneously admitted evidence and erroneous instructions.

We will discuss briefly each of the questions presented.

It is contended the information was defective in that it alleged such a publication as the "Labor Digest" *does* not exist, which, it is argued, has reference to September 3, 1957, the date of filing, rather than to June 21, 1957, the date of the alleged offense, and that the effect of the order overruling the motion to quash precluded defendant from establishing the fact that he in good faith intended to start or bring out a publication known as the "Labor Digest" in the near future which would carry the advertisement in question.

We find no merit in this contention. Perhaps it would have been grammatically and factually correct to have alleged that such publication *"did* not exist" on June 21, 1957, or words to that effect, but defendant has no valid claim of error concerning the information in the form in which it was filed. G. S. 1949, 62-1011, provides that no information may be quashed for any surplusage or repugnant allegation when there is sufficient matter alleged to indicate the crime and the person charged, nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits. Defendant was in no way prejudiced by its allegations. He knew precisely with what he was charged. Furthermore, the evidence, a portion of which has been related, definitely established the fact that no such publication as the "Labor Digest" was in existence on June 21, 1957, or, for that matter, at any other time in issue, and that the purported address and telephone number of the "publication" were utterly fictitious.

Defendant's contention as to the orders overruling his motion for discharge and for a directed verdict, and his demurrer to the state's evidence, are argued together and seem to fall under two headings. The first relates to the alleged defective information, and it is contended the state, under the ruling on the motion to quash, merely was required to prove that no such publication as the "Labor Digest" existed as an entity on September 3, 1957. One short answer to

this, other than what already has been stated, is that the state's evidence did relate to the facts as they existed on June 21, 1957, the date of the offense.

The second argument under this contention appears to be that as McEndree, the intended victim, was "on" to the scheme from the beginning he therefore was in no way deceived—therefore defendant cannot be held guilty of an attempt to deceive.

This argument is likewise without merit. In *State v. Bereman*, 177 Kan. 141, 276 P. 2d 364, it was stated that an attempt to commit a crime consists of three elements—the intent to commit the crime, the performance of some act toward its commission, and the failure to consummate its commission. Each of these elements is present here. There was no legal impossibility to consummate the offense—only a factual impossibility—the failure to deceive McEndree. The requisite intent to deceive was present; there was performance of several overt acts toward the commission of the offense, and it failed of consummation only because of the alertness of the intended victim. If defendant's contention in this respect were to be upheld, that is, if there was no attempt because there was no deception, criminals would be permitted to ply their illicit trade until they found a "dupe," thus giving them a favored status in the law over other thieves and larcenists.

In support of the argument that the court erred in overruling his motion for a directed verdict and for a new trial, defendant contends the testimony of McEndree that the voice of "Gray" over the telephone was that of defendant Visco himself and that they were one and the same person, was erroneously admitted. We do not agree. As we said in *State v. Kladis*, 172 Kan. 38, 238 P. 2d 522, identification may be by direct evidence or by facts and circumstances, and the completeness of the identification goes to the weight of the evidence rather than to its admissibility.

Some complaint is also made of the fact certain statements made by Ann Harris when she came to the body shop on the evening in question, out of defendant's immediate presence, were admitted. This contention likewise is without merit, and the order of proof, under the circumstances was immaterial. The evidence clearly established that she was part and parcel of the transactions under consideration.

Next, it is argued inferentially that defendant was the victim of "entrapment." There is no merit to this contention for the law is well established that it is no defense that the intended victim, on learning of the proposed crime, does nothing to stop its commission but allows the defendant to begin the commission of the crime so that he may be apprehended in the act. Surely it cannot be contended in this case that the criminal intent originated in anyone's mind other than defendant's.

And finally, it is contended the court erroneously instructed the jury. We have examined the instructions given and those refused. Discussion of them would be repetitious of what has been said. The jury was properly instructed on all issues in the case and defendant's complaints with respect thereto cannot be sustained.

We find nothing approaching reversible error in this record and the judgment is therefore affirmed.