No. 47,290

STATE OF KANSAS, *Appellee,* v. LENNIS ADAIR, *Appellant.*

(523 P. 2d 360)

Opinion filed June 15, 1974.

*J. R. Russell,* of Kansas City, argued the cause, and was on the brief for the appellant.

*John J. Bukaty, Jr.,* Deputy District Attorney, argued the cause, and *Vern Miller,* Attorney General, and *Nick A. Tomasic,* District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from a conviction of theft by deception under K. S. A. 1972 Supp. 21-3701 (*b*). The defendant-appellant, Lennis Adair, was found guilty after trial by jury. The facts in the case are not greatly in dispute and are basically as follows: The complaining witness, Mary Shewmaker Passler, is the aunt of the defendant. Prior to March of 1972 Mary Passler had seen very little of Lennis. In that month Lennis stopped by his aunt's home and advised her that he was in the neighborhood and that he was selling real estate. They discussed briefly her farm holdings and Lennis observed that the car she was driving was a wreck and that she obviously needed a new one. They visited her farm near Parkville, Missouri. A couple of days after that Lennis returned and mentioned that one of his business associates had a car to sell and suggested that she buy it. Mrs. Passler had inherited a fairly substantial sum of money from relatives on her side of the family. This money she had placed in a savings account in a bank in Kansas City, Missouri. During the following weeks the defendant visited his aunt several times and on those occasions suggested that she withdraw the money that she had in the savings account in Kansas City, Missouri, and put it in a bank in Kansas City, Kansas, so that various stepsons of Mrs. Passler would not get the money if she died. All of the conversations between the

defendant and his aunt took place in the absence of Mrs. Passler's husband. On May 8, 1972, the defendant came to Mrs. Passler's residence and suggested that she go with him to the bank in Kansas City, Missouri, withdraw her money from the savings account and place it in the Kansas bank. At that time the amount in the savings account was a little more than $4500. In addition Mrs. Passler had $800 in cash. Mrs. Passler then went with Lennis to the Kansas City, Missouri, bank, withdrew $4500 from the savings account, and they proceeded to the Fidelity State Bank, Kansas City, Kansas. Mrs. Passler had never had any business dealings with the Fidelity State Bank. On the other hand the defendant Lennis Adair did much of his banking business with that bank and had his accounts there.

Upon arrival at the Fidelity State Bank the defendant introduced his aunt to several of the bank officers. A savings account was opened jointly in the name of Mary Shewmaker (Mrs. Passler's maiden name) and in the name of Lennis Adair. An initial deposit of $5300 was made in the account. Mrs. Passler testified that she desired to use her maiden name on the account since there were two other Mary Passlers in Kansas City, Kansas, and the use of her maiden name would avoid possible confusion in that regard. Counsel for the defendant suggests that she probably wanted to conceal from her husband the fact she had opened the account. It is clear from the evidence that Lennis Adair handled the transaction at the Fidelity State Bank, filled out all the forms and then had his aunt sign the same. A passbook for the joint savings account was delivered to Mrs. Passler. At this point the defendant suggested that a safety deposit box be rented as a place to keep the savings account passbook where it would be safer. The aunt testified that she did not originally plan to do this but rented the box at his urging. She also testified that she did not know that his name was on the safety deposit box lease. Once the safety deposit box lease was signed the defendant had her place the passbook in the box and the bank employee locked it up. Immediately the defendant turned to his aunt and said, "You and the girl now have got the only keys." Mrs. Passler thought that there were only two keys to the box, she having one and the bank retaining the other. Actually the bank had delivered a third key to the defendant without the knowledge of Mrs. Passler. At the trial Mrs. Passler testified that she had given definite instructions and that there was an understanding between her and her nephew that he was not to touch

the money unless something happened to her. A fair inference from the entire testimony is that since the money came from the defendant's and her side of the family, the nephew would inherit the money upon her death but that it should remain her property during her lifetime. She wanted her nephew Lennis to have the money in case she died rather than it going to Mr. Passler's relatives. Thereafter it did not take the defendant long to act. On May 11, 1972, the defendant withdrew $275 from the savings account. On May 16, 1972, he withdrew an additional $5,000 and a final $25 on June 27, 1972. At the trial the defendant took the stand and admitted that he made the three withdrawals from the account and further testified that all the money had been spent on his "investments". All of the money withdrawn by defendant from the account has been expended. There is nothing left.

The defendant was convicted of theft by deception under K. S. A. 1972 Supp. 21-3701 (*b*) which states in pertinent part as follows:

"21-3701. Theft. Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(*b*) Obtaining by deception control over property;   .   .   ."

The term "deception" is defined in K. S. A. 1972 Supp. 21-3110 as follows:

"(5) 'Deception' means knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact."

The defendant has raised four points on this appeal. Three of these points are basically the same and raise the issue whether the evidence presented at the trial was sufficient to sustain the verdict of guilty of theft by deception. The defendant's other point concerns an alleged trial error which will be discussed later.

We will first consider whether or not the evidence presented was sufficient to sustain the verdict of guilty of theft by deception. We have no hesitancy in holding that the evidence was entirely sufficient to support the verdict of the jury. Where the sufficiency of evidence to sustain a conviction is raised on appeal the issue is not whether the evidence establishes guilt beyond a reasonable doubt but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in a light most favorable to the state. (*State v. Platz*, 214 Kan. 74, 519 P. 2d 1097.) In order to convict the defendant of theft by deception it was necessary for

the state to prove that Mary Passler was the owner of the $5300, that the defendant obtained by deception control over the $5300, and that the defendant intended to deprive Mary Passler permanently of the use or benefit of her property. The evidence clearly establishes these necessary elements of the crime. It was, of course, not contested that Mary Passler was the owner of the $5300 and that the defendant obtained control over that money. The deception arises out of the entire factual circumstances which stated simply tended to prove that the defendant conned his aunt into putting her money in a joint savings account and then into renting a safety deposit box so that he could obtain possession of the passbook and withdraw the money. The false representation is found in the defendant's false statement to his aunt that only she and the bank had keys to the safety deposit box and the implied representation that the passbook and the money it represented were within her exclusive custody and control. It is clear to us that such conduct on the part of the defendant established deception within the meaning of the statutory definition. The evidence is also sufficient to establish the defendant's intent to deprive Mary Passler permanently of the use or benefit of her money. The defendant withdrew the money contrary to her instructions, converted it to his own use and there is nothing left. Such conduct on his part is sufficient to establish circumstantially the intent to deprive Mary Passler permanently of her property. We conclude that the evidence was sufficient to sustain the verdict of guilty.

The defendant's other point on the appeal concerns the claimed prejudicial effect of a response to a question made by Mrs. Passler in the presence of the jury. The specific portion of her testimony complained of is as follows:

"Q. Now, did you have any conversation with Lennis after this day—after he went home and you had put the money in the Fidelity State Bank?

"A. No.

"Q. When was the next time you talked with him?

"A. The day he come up and stole the car.

"Mr. Russell: I am going to object to that, Your Honor, and ask—

"The Court: I will strike this and instruct the jury to disregard this. We are not talking about the car, now, we are talking about this $5,300.00.

"Mr. Russell: I would like to approach the bench.

"The Court: Come up, please.

"Thereupon, Oral proceedings were had at the bench, outside the hearing of the jury as follows:

"Mr. Russell: I make a motion at this time that the Court declare a mis-

trial in light of these remarks, Your Honor. I think the remarks are of such a nature that I don't think this man is going to get a fair trial."

The trial court overruled the motion and refused to grant a mistrial. The defendant contends here that the trial court erred in failing to grant a mistrial because of the highly prejudicial nature of the aunt's remarks. We have concluded that the trial court did not abuse its discretion in refusing to grant a mistrial on this basis. In the first place we note that the answer objected to was not solicited by the prosecutor but was in the nature of a spontaneous remark on the part of the witness. Furthermore the trial court immediately ordered the remark stricken and instructed the jury to disregard it. In its instructions prior to submission of the case the court again admonished the jury that it should disregard testimony which the court had stricken. Finally defendant's counsel in his cross-examination of Mrs. Passler brought forth before the jury the full details of the transaction between Mrs. Passler and the defendant regarding the purchase of the automobile. Briefly stated this testimony showed that the defendant purchased a car for Mrs. Passler with her funds and without her knowledge placed title to the car in his name and furthermore that she gave him the money to purchase the license plates which were also issued in his name. The car title was later changed from Lennis Adair to Mary Passler after it was discovered that the defendant had withdrawn her money from the joint savings account. We believe that any potential prejudice resulting from the unsolicited remark of Mrs. Passler was inconsequential in view of defense counsel's developing the facts about the automobile transaction in such great detail. The trial court had a much better opportunity than do we to assess the effect of the remark on the defendant's right to a fair trial. We cannot say that the trial court abused its discretion in refusing to grant a mistrial under all the circumstances.

The judgment of the district court is affirmed.