No. 49,063

STATE OF KANSAS, *Appellee,* v. CHARLOTTE FINCH, *Appellant.*

(573 P 2d 1048)

Opinion filed January 21, 1978.

*Bruce N. Karstadt,* of Lindsborg, argued the cause, and *Randall B. Jones,* Washburn Legal Clinic, and *Alan L. Dunavan,* of Osawatomie, was with him on the brief for the appellant.

*Albert D. Keil,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Gene M. Olander,* district attorney, and *Kathy R. Vetter,* of Salina, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from a conviction of theft by deception (K.S.A. 21-3701[*b*].) The basic issue presented is essentially this: In order to prove a defendant guilty of theft by deception under 21-3701(*b*), must the state prove that the intended victim was actually deceived and actually relied on the false representation?

The state's evidence disclosed the following factual circumstances: On January 4, 1976, at approximately 1:00 p.m. the defendant, Charlotte Finch, was observed in the Richman-Gordman store in Topeka by a security guard, Donna Snyder. For some reason Snyder became suspicious of the defendant and followed her as she made her way to the store's baby department. Snyder positioned herself behind a one-way mirror directly behind the baby rack where she could observe the defendant looking through baby dresses. Snyder testified that she observed the defendant take a baby dress from one side of the rack, go to the other side, and then remove a sales tag from a dress that was on sale and pin it to another dress. The dress on which she pinned the tag was not on sale. She observed the defendant repeat the procedure with another dress. The security guard then alerted the cashier, Carol Grandstaff, informing her that a customer had switched the price tags on some merchandise, was proceeding toward the checkout counter, and would probably be going

through the line. Grandstaff was instructed by Snyder to let the defendant through the checkout and to charge her the sale price as indicated by the switched sale tags, unless the defendant asked her to check the correctness of the price. When the defendant went to Grandstaff's checkout counter with the dresses, Grandstaff noticed that the sales price tags had been removed and reinserted. Pursuant to her instructions, the cashier let defendant pay the $2 sales tag price for each of the dresses and permitted her to pass through the checkout counter with the dresses. Defendant then proceeded to leave the store. The defendant was stopped by Donna Snyder. Snyder introduced herself and asked the defendant to come back into the store. The defendant did so. Snyder then called the police. The defendant was arrested.

The defendant's testimony conflicted with the above narrative. She testified that, as she was browsing through the baby department, she noticed a rack marked "Clearance." Assuming that the entire rack was on sale, she browsed through the baby dresses and selected two dresses that were on sale for $2 each. Defendant testified that she did not switch any price tags on any dresses. Assuming, however, that there was a switch of price tags, it is clear from the evidence that the employees of Richman-Gordman were not deceived by such action. It is undisputed that the defendant Finch was permitted by the cashier to go through the checkout stand with the merchandise after paying the price marked on the sales tag at a time when the cashier had been informed that the sales tags had been switched.

At the outset we should examine the Kansas statutes which pertain to the crime of theft by deception to determine the elements of the crime. K.S.A. 21-3701 was enacted in 1969 (effective July 1, 1970) as a consolidated theft statute to combine the former crimes of larceny, embezzlement, false pretenses, extortion, receiving stolen property and the like into a single crime of theft. There is a comprehensive discussion of the historical background of the statute and the objective sought in the consolidation of the state's theft laws in an excellent article by Professor Paul E. Wilson. (*Thou Shalt Not Steal: Ruminations on the New Kansas Theft Law,* 20 Kan. L. Rev. 385 [1972].) The statute is also discussed in *State v. Bandt,* 219 Kan. 816, 549 P.2d 936. The crime of theft by deception is covered under K.S.A. 21-3701(*b*) which states in pertinent part as follows:

"21-3701. **Theft**. Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:

. . . . . . . . . . . . . . . . . . . . . . . . .

"(*b*) Obtaining by deception control over property; . . ."

K.S.A. 21-3110 defines several of the words used in the theft statute:

"21-3110. **General definitions.** The following definitions shall apply when the words and phrases defined are used in this code, except when a particular context clearly requires a different meaning.

. . . . . . . . . . . . . . . . . . . . . . . . .

"(5) 'Deception' means knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact.

. . . . . . . . . . . . . . . . . . . . . . . . .

"(11) 'Obtain' means to bring about a transfer of interest in or possession of property, whether to the offender or to another.

"(12) 'Obtains or exerts control' over property includes but is not limited to, the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property."

Because section (*b*) of 21-3701 is the only provision in the 1970 criminal code dealing with the crime of obtaining property by deception or fraud, it is clear that that subsection incorporates therein the former crime of obtaining property by false pretenses. That offense was previously defined and made a crime in K.S.A. 21-551 (Corrick 1964) which was repealed when the new criminal code became effective. In prosecutions under the former statute the state was required to prove the following four elements to establish the crime of obtaining property by false pretenses:

(1)   There must be an intent to defraud;
(2)   there must be an actual fraud committed;
(3)   false pretenses must have been used for the purpose of perpetrating the fraud; and
(4)   the fraud must be accomplished by means of the false pretenses made use of for the purpose, that is, they must be the cause, in whole or in part, which induced the owner to part with his money or property. (*State v. Handke,* 185 Kan. 38, 340 P.2d 877; *State v. Matthews,* 44 Kan. 596, 25 Pac. 36; *State v. Metsch,* 37 Kan. 222, 15 Pac. 251.)

The requirement of a reliance upon the false pretenses which induced the owner to part with his property is generally considered to be an essential element of the crime of false pretenses throughout this country. In *State v. Handke,* supra, the court

noted the following general rule as stated in 35 C.J.S. False Pretenses § 6, p. 811:

"Generally speaking, to constitute the crime of obtaining property by false pretenses there must be a false representation or statement of a past or existing fact, made by accused or someone instigated by him, with knowledge of its falsity and with intent to deceive and defraud, and adapted to deceive the person to whom it is made; and there must be, further, a reliance on such false representation or statement, an actual defrauding, and an obtaining of something of value by accused or someone in his behalf, without compensation to the person from whom it is obtained.   . . ."

It is clear that under the facts of this case, the defendant could not have been convicted of the crime of false pretenses under the former statute. The state's failure to show actual deception and reliance would sustain, at most, a conviction of an attempt to obtain property by false pretenses. (*State v. Visco,* 183 Kan. 562, 331 P.2d 318.)

The first question which we must determine is whether the legislature, by incorporating the former crime of obtaining property by false pretenses within the crime of theft by deception in K.S.A. 21-3701(*b*), intended to require the state to prove as an element of the crime of theft by deception that the defendant's false representation was the instrumentality or means by which he received or obtained possession of the property, that is, that the owner was genuinely deceived by the defendant's representations, and relied thereon in surrendering control over his property to the defendant. An examination of the cases from other jurisdictions which have enacted consolidated theft acts leads to the conclusion that in every such jurisdiction the basic elements of the various theft crimes included within the particular consolidated theft statute have not been changed, absent a clear showing of a contrary legislative intent. (*People v. Ashley,* 42 Cal. 2d 246, 267 P.2d 271, 279 [1954], *cert. den.* 348 U.S. 900 [1954]; *State v. Gale,* 322 S.W.2d 852 [Mo. 1959]; *People v. Karp,* 298 N.Y. 213, 81 N.E.2d 817 [1948]; *State v. McCormick,* 7 Ariz. App. 576, 442 P.2d 134, 139, vacated on other grounds, 104 Ariz. 18, 448 P.2d 74 [1968].)

Professor Paul E. Wilson, in his article on the consolidated theft act, makes the following observations:

" 'Theft' is a term that was not employed by the common law of crimes; at least, the term was not used to identify a common law offense. By the definition of a statutory crime of theft, was it intended to broaden significantly the scope of the traditional crimes within its purview? Consolidation does not mean enlargement.

There is authority that simplified stealing statutes neither broaden the crime of larceny nor proscribe conduct previously legal and that the fact of consolidation does not change the elements of the several offenses consolidated. The drafters of the Kansas statute did not generally intend to prohibit conduct that was not criminal prior to the enactment of the code. . . .

". . . [T]here was no intent, nor is there evidence of an intent, to change the basic natures of the crimes the new act comprehends. . . .

". . . At the same time, the elements of the several types of theft merged together have not been changed, and a judgment of conviction based on a general verdict of guilty can be sustained only if the evidence discloses elements of one of the consolidated offenses." (20 Kan. L. Rev. 398-400.)

Professor Wilson's conclusions in this regard are referred to in *State v. Bandt,* supra. The issue involved here was not before us in *State v. Adair,* 215 Kan. 54, 523 P.2d 360. We find no language in the statute which demonstrates a legislative intention to change the elements of the several offenses which were consolidated in the new theft statute.

On the contrary, it is our judgment that the words contained in the statute, when construed in accordance with the statutory definitions or when given their natural and ordinary meanings, show clearly that the legislature intended to require the state to prove that the intended victim was *actually* deceived and *actually* relied upon the false representation in order for the defendant to be found guilty of theft by deception. K.S.A. 21-3701 requires that the defendant obtain *by* deception control over property with the intent to deprive the owner permanently of the possession, use, or ownership of his property. The state in the present case was required to show that the defendant obtained control over the property of Richman-Gordman *by* deception. The word "by" has several natural and ordinary meanings which are universally accepted. (Webster's Third New International Dictionary, unabridged, pp. 306-307.) The word "by" is sometimes used to express a relation of time and sometimes to signify place or position. (12 C.J.S. By, p. 865.) Here it is clear that the word "by" is not used in the statute to express a relation of time or place. It is obviously used as indicating an agency or instrumentality as a causative factor. See for example Ballentine, Law Dictionary with Pronunciations, Second Edition, where the word "by" is defined as follows:

"The word may mean 'through the means, act, or instrumentality of.' . . . Thus, 'an injury by accident' is synonymous with 'an injury caused by accident.' See Carroll v. Industrial Commission, 69 Colo. 473, 19 A.L.R. 107, 109, 195 Pac. Rep. 1097." (p. 180.)

The term "by" has been judicially construed where it is used in statutes making it a crime to obtain property by false pretenses. In *Commonwealth v. Walker,* 108 Mass. 309 (1871), the Supreme Judicial Court of Massachusetts states that the words "by a false pretense" as used in the criminal statute were substantially equivalent to the words "by means of a false pretense." A California statute was construed in a similar manner in *People v. Harrington,* 92 Cal. App. 245, 267 Pac. 942 (1928) and most recently in *People v. Lorenzo,* 64 Cal. App. 3d Supp. 43, 135 Cal. Rptr. 337 (1976).

The factual circumstances in *Lorenzo* are quite similar to those in the present case. There the defendant was observed by the manager of a supermarket to switch price tags from one kind of glove to another kind of glove and also to switch price tags placed on chickens. He was arrested by the manager in the parking lot after having paid the amount indicated on the switched price tags. He was charged with the offense of theft by false pretenses. In setting aside a conviction of theft by false pretenses, the Court of Appeals held that the defendant could not have been convicted of theft by false pretenses since the manager of the supermarket at no time relied upon the defendant's conduct. Since the manager was the agent of the market owner, his knowledge was held to be that of the market owner. The California Court of Appeals determined, however, that the offense of attempted theft by false pretenses had been established.

Another quite similar case is *State v. Hauck,* 190 Neb. 534, 209 N.W.2d 580, 60 A.L.R.3d 1286 (1973). In *Hauck* the defendant, with the knowledge of the owner, changed price tags between two cartons, placing the lower price tag on the carton which he took to the checkout counter and attempted to purchase at that price. He was immediately arrested. In the course of the opinion the Supreme Court of Nebraska observed that, if the defendant had been successful in carrying out and completing the transaction as intended, he would have been guilty of obtaining property by false pretenses in violation of the state statute. The court pointed out, however, that an essential element of obtaining property by false pretenses is that there is reliance upon the representations made and stated that "the pretense must be an effective cause in inducing the owner to part with his property,

and if the owner has knowledge of the truth, the offense has not been completed." (*State v. Bohannon,* 187 Neb. 594, 598, 193 N.W.2d 153 [1971].)

We have concluded that in order to convict a defendant of theft by deception under K.S.A. 21-3701(*b*) the state must prove that the defendant with the required intent obtained control over another's property *by means of* a false statement or representation. To do so the state must prove that the victim was actually deceived and relied in whole or in part upon the false representation.

At the trial in this case, at the conclusion of the state's evidence, the defendant moved for her discharge on the grounds that the state had failed to establish that the owner of the property was actually deceived and in fact relied upon the defendant's alleged act of deception in surrendering control over the merchandise. Under the evidence the defendant was not entitled to an absolute discharge from further prosecution. However, the trial court erred in failing to submit the case to the jury under proper instructions on the lesser included offense of attempt to commit theft by deception as defined in K.S.A. 21-3301(1). In this case substantial evidence was introduced tending to show the defendant committed an overt act toward the perpetration of a theft by deception with the intent to commit such crime but failed in the perpetration thereof. As to the other points raised on the appeal we find that either they are resolved by the determination of the issue discussed above or are without merit.

The judgment of the district court is reversed and the case is remanded with directions to grant the defendant a new trial on the lesser included offense of attempt to commit theft by deception.

McFARLAND, J., not participating.

SCHROEDER, C.J., dissenting: I respectfully dissent. The majority opinion totally disregards the language of K.S.A. 21-3701(*b*).

It is elementary law in Kansas that criminal statutes are to be strictly construed. Under this doctrine ordinary words are to be given their ordinary meaning. This means a statute should *not* be read so as to add language which is not readily found within it. Similarly, it is not within the province of the court to read out of

the statute what as a matter of ordinary English language is written in it. As we stated in *State, ex rel., v. American Savings Stamp Co.,* 194 Kan. 297, 398 P.2d 1011:

"The object of the rule is to establish a rule of certainty to which the individual may safely conform without fear of the statute being misinterpreted by a court or prosecutor. If we go beyond the fair meaning of the language used in the statute and attempt enlargement by implication or intention we have abandoned certainty. Courts are not at liberty to extend by intendment statutes creating and defining crimes. . . ." (p. 300.)

Nowhere within K.S.A. 21-3701(*b*) is there any requirement that *reliance* be considered as a necessary element of the crime.

The majority opinion places importance on cases from other jurisdictions which have held the basic elements of the various theft crimes remain the same under the new consolidated theft statutes. These cases are not convincing. A careful review of the criminal statutes within these jurisdictions reveals they are easily distinguishable from our statute. Each retains the common-law language of false pretenses within the new statute, whereas our statute specifies that the acts be done with the *intent* to deprive the owner permanently of the possession, use or benefit of his property.

The Judicial Council note pertaining to K.S.A. 21-3701 indicates the statute was drafted after examining the Illinois Criminal Code, § 16-1 and the Model Penal Code, § 223.1. In *People v. Decker,* 19 Ill. App.3d 86, 311 N.E.2d 228 (1974), under a statute identical to ours, the Appellate Court of Illinois, First District, Third Division, held:

". . . The essential elements which must be proved to sustain a charge of theft by deception are that a named person was the owner of a specified property; that the accused knowingly obtained by deception control over that property; and that the accused acted with the intent to permanently deprive the named owner of the use and benefit of that property." (p. 97.)

Nowhere does the Illinois court indicate that actual reliance by the victim on the deception is a necessary element to sustain the conviction.

Moreover, in *State v. Adair,* 215 Kan. 54, 523 P.2d 360, a case involving theft by deception, our court correctly set forth the elements needed to convict under the statute without mentioning reliance. We said:

". . . In order to convict the defendant of theft by deception it was neces-

sary for the state to prove that Mary Passler was the owner of the $5300, that the defendant obtained by deception control over the $5300, and that the defendant intended to deprive Mary Passler permanently of the use or benefit of her property. . . ." (pp. 56-57.)

The state proved intent and deception on the part of the defendant under the case at bar; the alertness of the intended victim should not excuse or lessen the seriousness of the act.

*State v. Visco,* 183 Kan. 562, 331 P.2d 318, a case involving an attempt to obtain money by false pretenses, was decided under our former statute, G.S. 1949, 21-551. There, the defendant contended because the intended victim was "on" to the scheme, he was in no way deceived. Our court said:

". . . There was no legal impossibility to consummate the offense—only a factual impossibility—the failure to deceive McEndree. The requisite intent to deceive was present; there was performance of several overt acts toward the commission of the offense, and it failed of consummation only because of the alertness of the intended victim. . . ." (p. 567.)

The same is true here. There was no crime until after the defendant passed through the checkout stand and paid the lesser amount, because it is not a crime to take one sales tag and replace it with another.

We are presented with a question of grave interest and importance to merchants. Store security personnel are required to use extreme care when detaining or stopping anyone outside the store. The security guard, Donna Snyder, could do little more than watch the defendant until she attempted to pay the lesser amount and leave. Following the reasoning of the majority opinion to its logical extreme, anyone other than the security personnel of Richman-Gordman could have arrested the defendant because of the reliance element. It is difficult, indeed, to imagine a situation where store personnel will be deceived in tag switch situations. Most stores utilize a marking method through double tagging which makes it possible for a sales clerk or cashier to identify the sales item. Is it no less a crime, then, because the sales personnel cannot be deceived? I think not. The majority opinion adds another element not included in the statute which makes it virtually impossible to secure a conviction in these cases.

Furthermore, the necessary elements of theft under K.S.A. 21-3701 do not include all of the elements of the crimes which 21-3701 replaces. For example, asportation, an element of larceny under our old statute G.S. 1949, 21-533, is no longer an element

under the new statute. Nor are the common-law elements included in the instructions given for theft under PIK, Criminal, § 59.01 which the trial court followed in this case.

Furthermore, in this case the record reflects the cashier, Carol Grandstaff, was warned to watch for a suspicious-looking customer fitting the defendant's description. She stated on direct examination at least two different times, "I didn't know whether it [referring to the price on the tag] was the right price or not." Even under the rules formulated by the majority, to which I do not agree, the cashier was deceived in that she was not sure of the correct price of the items.

It is respectfully submitted, the judgment of the trial court should be affirmed.

MILLER, J., joins in the foregoing dissenting opinion.