IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 107,872

STATE OF KANSAS,
*Appellee,*

v.

JODIE LABORDE,
*Appellant.*

SYLLABUS BY THE COURT

1.

Supreme Court Rule 8.03(a)(4)(C) (2014 Kan. Ct. R. Annot. 77) requires the State to file a petition for review or a cross-petition for review if it seeks Supreme Court review of a conviction reversed by the Court of Appeals.

2.

The State is not permitted to file a petition for review or a cross-petition for review if it prevails in the Court of Appeals merely because it disagrees with the rationale upon which the Court of Appeals relied.

3.

Theft by obtaining or exerting unauthorized control over property or services requires proof of different statutory elements than theft by obtaining control over property or services by deception.

4.

In order to establish the offense of theft by deception, the State must prove: (1) The victim was the owner of the property, (2) the defendant obtained control over the

1

property by means of a false statement or representation which deceived the property owner and upon which he or she relied, and (3) the defendant intended to deprive the owner permanently of the use or benefit of the property.

5.

Unless exceptional circumstances exist, appellate courts do not consider issues on appeal that were not raised by the parties.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 24, 2013. Appeal from Clay District Court; PAUL E. MILLER, judge. Opinion filed November 6, 2015. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Richard E. James,* county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

*Per Curiam*:  In this peculiar case, the State brought charges against the defendant asserting elements under one statutory theory of theft, but the jury convicted the defendant under instructions setting out a different theory of theft. The Court of Appeals found that the conviction was the result of error invited by both parties and affirmed on that basis. We conclude, however, that the parties never raised on appeal the discrepancy between the charge and the instruction and the case must be analyzed on the terms that the parties argued it, as a matter solely of sufficiency of the evidence. Considered from that perspective, we disagree with the conclusion that the Court of Appeals reached and reverse.

2

The evidence produced at trial shows that Staff Sergeant Harry Price III lived for approximately 2 months with the defendant Jodie Laborde on a farm in Clay County, Kansas. They had been in a relationship for about a year, and he planned on marrying her. Price kept personal items at the farm, including gear issued to him by the United States Army.

On October 3, 2010, Price and Laborde had a falling out after an altercation between his daughter and Laborde. Laborde called for police intervention, and a couple of officers arrived at the scene. Price informed them that he was leaving anyway for a legal proceeding in West Virginia, and he left the premises, taking with him tools and four small file boxes that were in his truck.

Price then called one of the officers and asked for permission to return to the farm to retrieve his dress uniform and other military gear. The officer went into the house and brought back a paper bag full of civilian clothing that Laborde provided. Laborde did not give him the dress uniform, however; she instead informed the officer that the dress uniform and other gear were in a storage shed in Abilene. Price then left for West Virginia, not returning until a week later.

Meanwhile, on October 5, 2010, Barb Heller, who moderated a military-family support group on the Internet, responded to Laborde's report that she was the victim of abuse. She traveled to Kansas from Arizona to meet Laborde and help her with household chores. While straightening up a closet, Heller discovered Price's dress uniform on the floor. When Heller inquired why the uniform was in the house, Laborde started to shout at her and accused her of going through her closets and belongings.

Upon his return from West Virginia, Price went to the farm on October 17 for the purpose of recovering his military gear, much of which had been issued in anticipation of deployment to Iraq. An officer escorting him told him he could not go onto the property, and Laborde informed the police escort that Price already had the materials he was seeking.

On November 2, Price called law enforcement and asked for assistance in going onto the farm to retrieve his property. Two officers accompanied him to the farm to keep the parties apart while the officers recovered the gear necessary for his deployment. Price waited while a deputy asked Laborde about his military gear. She told the deputy that she had taken the gear to Price's place of work. Price had already checked with his post, however, and verified that no one had brought any gear. When Price informed the deputy that he had checked with his post, Laborde then stated that she had taken the gear to a barracks where he had once been stationed. Price had already checked the barracks and determined that nothing had been turned in at that location either. Laborde then said that the gear was in storage.

Laborde initially told the police that they could not come onto the farm, and she claimed that she had sole control of the farm. She eventually relented and gave the police permission to look through the house and sheds. They found a bag of military gear, but name tags showed that it belonged to other soldiers, not Price, and Laborde told the officers that another soldier had started living at the farm.

Another deputy talked with Laborde and accompanied her back to the house. He persuaded her to allow Price to take his Harley Davidson motorcycle away from the farm. The police escort did not look for Price's other property, and again Laborde stated that Price already had constructive possession of all of the military gear, either at his barracks or in storage.

4

Not long afterwards, soon after Thanksgiving and shortly before service-family advocate Heller left Kansas, she had a conversation with Laborde about how her new romantic relationship was going. She asked if things were going well enough that Laborde could give Price his materials back. Laborde responded that she had sold his possessions at a garage sale.

Price subsequently obtained judicial leave to enter the farm to retrieve his property. On December 8, accompanied by a deputy, he walked through the farm. Laborde informed the police escort that she had taken Price's property to the base. Price nevertheless was able to locate about half of the missing military gear, but he never was able to locate about $4,615.50 worth of military property, including such items as coats, sleeping bags, hats, safety glasses, night-vision goggles, a first-aid kit, and shirts. When asked to explain how Price was able to find some of his military gear on the premises after she said that it was all gone, Laborde accused Price of sneaking onto the property and hiding the gear in a locked shed.

Around Christmas, service-family advocate Heller sent Laborde a text-message again inquiring about the status of Price's military gear. Laborde replied with a text-message reading: "WTF. Give it a rest! Taken or donated to GW! What is ur deal? U worried about them or us? NOTHING of theirs is anywhere near us or our home. Wanna come?" Laborde testified at trial that her message referred only to those items that Price left after his December 8 walk-through, and she further testified that police had given her permission to sell those items. Earlier, however, Laborde had denied sending the text and had accused Price's daughter of sending the text on her phone without her permission. Laborde continued to deny disposing of any military property.

5

Army Sergeant Luke McGuire was assigned to investigate Price's failure to return military property that was in his custody. McGuire testified that Price, despite having direct responsibility for the equipment, was not liable for its loss because he was not allowed back on the premises and had made reasonable attempts to retrieve it. During the course of his investigation, McGuire left messages for Laborde to call him back, but she never returned the calls. McGuire also checked with Price's unit headquarters and company buildings to determine whether the missing property had been turned in, which it had not.

On January 11, 2011, the State filed a complaint charging Laborde with one count of felony theft by deception under K.S.A. 21-3701(a)(2). On April 29, 2011, the State filed an information, again charging Laborde with theft by deception. Finally, on December 1, 2011, at the beginning of the jury trial, the State filed an amended information, repeating the K.S.A. 21-3701(a)(2) theft by deception charge but changing the owner of the property from Price to the United States Army.

Both parties submitted instructions to the court setting out the elements of theft by unauthorized control. The jury found Laborde guilty of felony theft, and the district court sentenced her to a guideline term of 7 months and ordered her to pay restitution. The Court of Appeals affirmed the conviction in *State v. Laborde*, No. 107,872, 2013 WL 2395452 (Kan. App. 2013) (unpublished opinion). This court granted Laborde's petition for review.

The parties have focused their arguments on whether the evidence educed at the trial sufficed to sustain a conviction for theft by deception. The Court of Appeals commented that Laborde was correct in her assertion that the State failed to present sufficient evidence to convict her of theft by deception. The parties reiterated these arguments before this court on review. At oral argument, Laborde insisted that the State

6

was precluded from even addressing the sufficiency of the evidence question because it neglected to file a cross-petition for review.

We note that the State is not only not required to cross-petition in an appeal in which it prevailed in the Court of Appeals, it is precluded from doing so. Supreme Court Rule 8.03(a)(4)(C) (2014 Kan. Ct. R. Annot. 77), addresses a situation in which the Court of Appeals *reverses* a criminal conviction. In such an instance, logically, the State is required to file a petition for review in order to obtain review of an issue. In the present case, however, the Court of Appeals affirmed the conviction.

Laborde faults the State for failing to do what we have explicitly told the State that it is not permitted to do. This court has explicitly held that the State is not permitted to petition for review from an issue that it won in the Court of Appeals, even if it disagreed with the rationale:

> "We first conclude that the State's petition for review on the correct interpretation of K.S.A. 2009 Supp. 60-455(d) was improvidently granted. The State has no quarrel with the Court of Appeals panel's ultimate decision in its favor, that is, the panel's affirmance of Hart's convictions and sentences. Only a party that is 'aggrieved by a decision of the Court of Appeals' is eligible to file a petition for review. Rule 8.03(a) (2012 Kan. Ct. R. Annot. 72). *The State does not qualify merely because it would have preferred a different rationale to support its victory*." (Emphasis added.) *State v. Hart*, 297 Kan. 494, 496, 301 P.3d 1279 (2013).

The issue of the sufficiency of the evidence therefore remains before us. Prosecutions in this state are based on the charging document, which may be a complaint, indictment, or information. K.S.A. 22-3201(a). Neither party suggests that there was error

7

in the jury instruction, and both parties restrict their arguments to whether the evidence supported a conviction of the charged crime, theft by deception.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

In relevant part, K.S.A. 21-3701 defines theft:

"(a) Theft is any of the following acts done with intent to permanently deprive the owner permanently of the possession, use or benefit of the owner's property:

'(1) Obtaining or exerting unauthorized control over property;

'(2) obtaining by deception control over property;'"

Theft by deception sets out different elements that the State must prove than theft by unauthorized control. Theft by deception demands a specific kind of proof from the State. The statutory language demonstrates clearly that the legislature intended to require the State to prove that the intended victim "was actually deceived and actually relied upon the false representation in order for the defendant to be found guilty of theft by deception." *State v. Finch*, 223 Kan. 398, 402, 573 P.2d 1048 (1978). The statutory phrase "by deception" indicates an agency or instrumentality as a causative factor. The State must prove that the defendant "obtained control over another's property by means of a false statement or representation." 223 Kan. at 404.

8

The Court of Appeals stated:

"Laborde correctly asserts that the jury did not have sufficient evidence to convict her of theft by deception. The State presented no evidence that Price or the U.S. Army transferred Price's military gear to Laborde in reliance on a false statement or representation. Although a host of evidence certainly suggests that Laborde lied about what she had done with the military gear, these lies were all post facto and therefore did not induce Price to transfer his military gear to Laborde. [Citation omitted.]" 2013 WL 2395452, at *3.

This holding by the Court of Appeals accurately summarizes the evidence, or the lack thereof, and is correct. The State did not produce evidence proving one of the necessary elements of theft by deception–that Laborde obtained control over Price's property by means of a false statement or representation that deceived Price and on which he relied. See *State v. Fritz*, 261 Kan. 294, 299, 933 P.2d 126 (1997). Giving away or selling Price's property may have been theft by exercising unauthorized control of the property, but lying about what she had done with the property did not, by itself, constitute theft. She already had control over the property which was located in the house and on the land that she occupied; she did not gain control over that property by means of subsequent misrepresentations.

If the Court of Appeals had ended its analysis at this point, it presumably would have reversed the conviction and we would simply affirm. The Court of Appeals elected, however, to proceed to an analysis of invited error. 2013 WL 2395452, at *4. Although the parties did not argue that Laborde was actually convicted of theft by unauthorized control, the Court of Appeals decided that the record contained sufficient evidence to sustain a conviction of that alternative theory of felony theft. The court then held that Laborde invited the unauthorized control instruction, which precluded her from complaining about a conviction based on that instruction.

9

The Court of Appeals improperly opened a door to an analysis of an issue that was not before it. As a general rule, unless there are exceptional circumstances, appellate courts do not consider issues on appeal that were not raised by the parties. *State v. Adams*, 283 Kan. 365, 367, 153 P.3d 512 (2007). Failure to brief and argue an issue constitutes a concession of an issue by the parties. See, *e.g.*, *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015); *State v. Johnson*, 269 Kan. 594, 602, 7 P.3d 294 (2000).

For this reason, we need not and do not evaluate the correctness of the reasoning employed by the Court of Appeals in concluding that the instruction constituted invited error. We note only that an instructional error of this type, when properly raised by a party, demands a deeper inspection of such issues as whether the change constitutes constructive amendment, whether structural error should apply, and whether courts should engage in harmless error analysis. See, *e.g.*, *United States v. Brandao*, 539 F.3d 44, 57 (1st Cir. 2008) (listing and discussing cases); *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001) (constructive amendment to charge is per se prejudicial but not necessarily structural error); *United States v. Floresca,* 38 F.3d 706, 713 (4th Cir. 1994) (constructive amendment to charge is structural error); *United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) (defendant indicted for involuntary manslaughter on theory he unlawfully killed the victim without malice "in the commission of an unlawful act," but jury instruction included alternative theories of commission of lawful act done unlawfully or lawful act done with reckless or wanton disregard for human life; held to be harmless because evidence necessary to prove each element contained in indictment was "essentially uncontroverted" and jury was admonished it could not convict of any conduct not charged in the indictment). The State did not seek to preserve its case by arguing constructive amendment, and the issue is not before us.

The posture of this case as argued by the parties is not nearly so complicated. This is, plain and simple, a sufficiency of the evidence appeal. We find that the evidence was insufficient to convict Laborde of theft by deception.

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed.

\* \* \*

ROSEN, J., dissenting.

I agree with the majority that the parties did not present this court with an issue that opens the door to the invited-error analysis adopted by the Court of Appeals. I disagree with the conclusion that the evidence was insufficient to sustain a conviction of theft by deception.

Classic instances of theft by deception might involve Nigerian princes or the Brooklyn Bridge. The defendant might lie about the authenticity of a document that the victim is signing, or the defendant might misrepresent the nature of something that the victim is buying.

The present case offers a different scenario. Here, the defendant lied about where the victim's property was located. The lies were of two kinds. First, Laborde lied when she said that certain property was no longer located on the farm where she and Price had lived together. Specifically, the dress uniform that he sought from her for his hearing in West Virginia was still in a closet in the house, although she insisted that it had been returned to Price's or the Army's custody. Second, Laborde lied about keeping property in a place accessible to Price or the Army when she had actually sold it or given it away.

11

Laborde nevertheless argues on appeal that her deception served the purpose of *concealing* her exercise of unauthorized control, not *enabling* the unauthorized control. The Court of Appeals accepted this argument, stating in dicta that Laborde's lies "were all post facto and therefore did not induce Price to transfer his military gear to Laborde." 2013 WL 2395452, *3.

Although the State's theory may present an unusual case of theft by deception, I would find that the State presented sufficient evidence to sustain a conviction under that theory. Price's military gear was exclusively subject to Laborde's control because she placed restraints on his access to their mutual home. The only way that Price could locate his gear was to rely on Laborde's representations of where the gear was located. That way, law enforcement, acting on his behalf, could recover the gear, or, much later, Price could take a one-time attempt to find the gear while he was escorted by law enforcement. Her dishonest statements created a barrier to Price regaining possession of the gear.

When Laborde stated that the dress uniform was not on the farm and did not disclose that it was, in fact, in her closet, neither Price nor the police had any reason to look there among her personal effects. When she stated that other gear was at the barracks and did not admit that she had placed it in a shed on the farm, she likewise provided a disincentive for Price to search the outbuildings. She did not have to move the property off the farm in order to deprive Price of the effective ability to regain possession. Her deceit precluded Price from obtaining at least some of his property for a time until she sold it or gave it away. Her denial that she knew where the missing property was, or her various claims of having returned the property to Price's or the Army's custody, constituted an exercise of control over the property by means of deception.

I would affirm the conviction as supported by the evidence educed at trial.